BLOOMER, The (HAY v.). See Case No. 6,-255.

## Case No. 1,559.

### BLOOMER v. STOLLEY.

[5 McLean, 158;[1] 8 West. Law J. 158; 1 Fish. Pat. R. 376.]

Circuit Court, D. Ohio. July, 1850.

PATENTS—POWER OF CONGRESS—CONSTITUTIONAL LAW—EXTENSION OF PATENT UNDER ACT OF 1836—EXTENSION BY CONGRESS—LICENSEE—EXTENSION BY IMPLICATION—SURRENDER AND CORRECTION—INFRINGEMENT.

1. Congress has the constitutional power to grant the extension of a patent which has been renewed under the act of 1836.

[Cited in Bloomer v. McQuewan, 14 How. (55 U. S.) 542.]

2. Any legislative act, which does not assume the form of a contract, may be repealed by a subsequent legislature.

[Cited in Fire Extinguisher Case, 21 Fed. 43.]

3. It was in the constitutional power of congress to make special grants to inventors, or to authorise them to be issued in the modes provided.

4. In granting public lands certain forms and modes of proceeding were required by law.

5. But this does not prevent congress from making legislative grants.

6. The same principle applies in making grants to inventors. They must be limited; but they are issued under established modes, or at the discretion of congress.

7. By the construction of the act of 1836, the licensee of a planing machine may run his machine under an extension of the right, by that act.

8. But that act has no application to an extension of the right by congress.

9. There being no provision in the act extending the right, nor in the contract that the assignee should have an interest in the renewal of the patent, none can be implied.

[See Gibson v. Cook, Case No. 5,393.]

10. A surrender and correction of a patent, give effect to it in all cases of infringement subsequently accruing, though the patent was originally invalid.

[Cited in Hussey v. Bradley, Case No. 6,946.]

[See Grant v. Raymond, 6 Pet. (31 U. S.) 218; Shaw v. Cooper, 7 Pet. (32 U. S.) 292; Stanley v. Whipple, Case No. 13,286; Smith v. Pearce, Id. 13,089; Woodworth v. Hall, Id. 18,016.]

11. And, for this purpose, the correction of the patent is considered as having been made at the time it was originally issued.

[Cited in Hussey v. Bradley, Case No. 6,946.]

[12. While no state can impair the obligations of a contract, this inhibition does not apply to the federal government.]

[Cited in Bucknor v. Street, Case No. 2,098; Re Smith, Cases Nos. 12,986 and 12,996.]

[In equity. Bill by Elisha Bloomer, assignee of letters patent granted to William W. Woodworth, December 27, 1828, extended November 15, 1842, and reissued to William Woodworth, administrator, etc., July 8, 1845 (No. 71), against John H. Stolley, for infringement. Defendant moves to vacate an injunction granted in vacation. Motion denied.]

Coffin, Norton, and Stanbery, for plaintiff.
Mr. Walker, for defendant.

OPINION OF THE COURT. The plaintiff claims, as assignee, the exclusive right of using Woodworth's planing machine, and authorizing others to use it, within the county of Hamilton, in this state, including a certain district opposite thereto, in the state of Kentucky; and this bill was filed, and an injunction obtained, to enjoin the defendant from running the machine, in violation of the plaintiff's right. The injunction was granted in vacation, and a motion is now made to dissolve it on the following grounds:

1. The extension of the patent granted by congress was not within its constitutional power, and is, consequently, void.

2. If valid prospectively, the extension cannot affect, injuriously, previously acquired rights.

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

3. A surrender and renewal of the patent cannot affect previously acquired rights.

Woodworth obtained his patent on the 27th of December, 1828. The patentee died the 9th of February, 1839. On the 16th of November, 1842, the patent was extended seven years, on the application of his administrator, and congress extended the patent another term of seven years, on the 26th of February, 1845. On the 8th of July, 1845, the original patent was surrendered, and certain defects being corrected, it was reissued. Bloomer, the plaintiff, claims the title through several assignments; and, among others, one from Brooks and Morris, who acquired title 29th of August, 1843, and held it until November 4, 1845. On the 11th of September, 1843, they made a license to Stolley. Bloomer's title was acquired July 2, 1849. The original patent would have expired in 1842, but, being extended under the act of 1836, it was continued to 1849. The validity of this extension has been settled by several of the circuit courts; and, finally, by the supreme court; no objection is made to it. But the extension, by congress, is alleged to be invalid; and as the right set up by the complainant was derived under this extension, it is alleged to be of no validity. By the eight section of the first article of the constitution, power is given to congress to "promote the progress of science and useful arts, by renewing, for limited times, to authors and inventors, an exclusive right to their respective writings and discoveries." And it is contended that the time of the grant must be limited by congress in each case as it arises, or by a general provision applicable to all cases, and that the latter would seem to be the most appropriate, if not the only mode of making the grant. Special legislation, it is said, on such a subject, is not only opposed to the spirit of our institutions, but it would be impossible to legislate in each particular case. That the object being to receive an exclusive right, in order to promote the progress of invention, an established mode of procedure is implied. The terms are general to all "authors and inventors," which implies a general regulation on the subject. The time must be limited; and this cannot be done, it is argued, consistently with the constitution and the general policy of our laws, except by a general rule of action. That laws cannot be just which are unequal; and this, it is insisted, was the original understanding of congress, as appears by the first patent act and acts subsequently passed. The grant was limited to fourteen years, with the power to certain officers, designated in the act of 1836, on the proof of certain facts, to extend the patent for seven years. This power of extension was first given in the act of 1832. It was to be done by congress on petition and notice. The object of the renewal is to compensate the inventor, on proof that he has not been compensated for his "ingenuity, labor, and expense," in the matter of his invention; and this was made the ground of extension, whether by congress or by certain officers of the government.

It is insisted that, by the act of 1836, congress exhausted its powers, and, consequently, cannot extend the limitation of the grant; if this could be done, the limitation of the constitution would become a dead letter; and it is urged that the reasoning in McCulloch v. Maryland, 4 Wheat. [17 U. S.] 316, in this respect, is conclusive against the power of congress.

When a rule of action is prescribed for the exercise of the executive or judicial power, it must conform to such rule; and, generally, where no appeal is given, the power, in a particular case, terminates when the act is done; but this is not the character of a legislative power. There would seem to be no doubt that the constitutional power in question might have been fully exercised by congress in making special grants; this might have engrossed much of the time of congress, and it might not be thought the most competent body to investigate the facts and do equal justice to inventors; but this would be a question of expediency, and not of constitutional power. Congress, from the elements of which it is composed, is not considered the most fit tribunal to investigate claims; and yet it continues to exercise this power. Unlike the decision of a court, a legislative act does not bind a subsequent legislature. Each body possesses the same power, and has a right to exercise the same discretion. Measures, though often rejected, may receive legislative sanction. There is no mode by which a legislative act can be made irrepealable, except it assume the form and substance of a contract. If in any line of legislation a permanent character could be given to acts, the most injurious consequences would result to the country. Its policy would become fixed and unchangeable on great national interests, which might retard, if not destroy, the public prosperity. Every legislative body, unless restricted by the constitution, may modify or abolish the acts of its predecessors; whether it would be wise to do so, is a matter for legislative discretion.

Congress adopted a system for the sale and granting of the public lands, but no one doubts that it may make special grants of land by law. This has been done; and the same principle applies to the granting of an exclusive right to an inventor. The machinery through which this right is ordinarily applied for, and obtained, may be dispensed with, and the title may be conferred by a legislative grant; and this may be done in regard to the extension of an exclusive right by congress, the same as in originally granting it. No constitutional restriction appears to exist against the exercise of this power by congress. Whether such a restriction may be found in previously acquired rights, will

be considered under another head. There is no prohibition in the law against a second extension, while provision is made for a first extension, should the inventor bring himself within it. The expressed policy of the law is to compensate the inventor, not only for his expense, but for his labor and ingenuity; and, if this object be not attained by a first extension, there would seem to be justice in a second. This can only be done by act of congress, as the law makes no provision on the subject. Had the act of congress provided for a second extension, on the same principles of the first one, the power could not have been questioned. It is said monopolies are odious; but a patent right, that shall compensate the inventor, is not a monopoly, in the general sense of that term. The inventor takes nothing from society. He confers upon it a benefit by his labor and ingenuity; and it is reasonable that, he should be paid for such services, and the law designs to give him nothing more than a compensation; he is entitled to this by the immutable principles of justice, and it is believed to be given to him by the laws of all civilized nations.

It is alleged that there was no inquiry as to the expenses and labor, when this patent was extended by act of congress. It is not the province of the judiciary to inquire into the reasons which induced the passage of the law, with the view of testing its validity. If constitutional, it must be enforced, without regard to the policy or justice which dictated it.

The second ground assumes that if congress had power to extend the right of the patentee, it can only operate prospectively. Stolley obtained his license the 11th of September, 1843, to run one of the Woodworth machines, until the expiration of the judicial extension under the act of 1836. As the law stood, the exclusive right would then expire and become common; and it is argued that it may be fairly presumed this expectation induced the defendant to incur the expense of purchasing the planing machine, and putting it in operation; but, if this law affect his right, he must take out a new license, or abandon his machine and lose his expenditures; and a reference is made to the case of Wilson v. Rousseau, 4 How. [45 U. S.] 646, where the court held the licensee was entitled to run his machine during the extension of the patent under the act of 1836. The decision in that case was made by the construction of the act, and can have no application to the legislative extension under consideration. In that act of extension there was no saving of the right of any license, expressed or implied. In regard to the value of the machine, it may be a matter of doubt whether it was rendered less valuable by the extension of the exclusive right. A right which becomes common can be of no more value to one person than another, except as the capacity and efficiency of one may be superior to another. If the right to use the machine be common, in all probability it could not be sold for a higher price than it would bring under an extension of the exclusive right. In the latter case, a license must be purchased; but more than a compensation for this would be realized in lessening the competition; so that, whether the licensee should elect to run his machine or to sell it, his interests would not be much, if any, affected by an extension of the right. To presume that the patentee would fix the price of a license so high as to discourage a purchaser, is contrary to the ordinary motive of human action.

If an extreme case be supposed of an individual who had expended a large sum in preparing to run several machines, under a license, which, on an extension of the right, the patentee shall refuse to renew, could the law redress such 'an injury, whether real or supposed? It is true, the licensee may have expected that, at the termination of the patent, the right would become common; but how would his case differ from any other, person who had incurred an expenditure equally large to run machines, when the right should become common, but was prevented from doing so by a legislative extension of the patent? In both cases, the same expectation led to the expenditure, and the same act of extension to the disappointment. In principle, the claims would be the same; and if the licensee could be held exempt from the operation of the act, the other would be equally exempt. The true answer to the case put is, the expenditure made by the licensee, or any other person, was made with a presumed knowledge of the law that congress had power to extend the patent; and, with this knowledge, the risk of a renewal of the patent was incurred. Under such circumstances, there can be no ground for complaint. Congress might have imposed conditions favorable to the licensee, on the renewal of the right; but this not having been done, and there being no provision in the contract of license beyond the term of the patent, none can be implied. A retrospective law is not, necessarily, unconstitutional. No state can impair the obligations of a contract; but this inhibition does not apply to the general government. In Satterlee v. Matthewson, 2 Pet. [27 U. S.] 380, this court held that a statute of Pennsylvania was valid, which declared that the relation of landlord and tenant should exist under a certain Connecticut title in that state, although, prior to such statute, the courts had decided that no such relation existed, and effect was given to this statute by the courts of the state, and by the supreme court in the case above cited.

The third ground assumes that the surrender and renewal of the patent cannot affect previously acquired rights. How was the interest of Stolley affected by the legislative extension and subsequent surrender and correction of the patent? In September, 1843, he received a license to run Woodworth's plan-

ing machine. This was under the extension of the patent procured by the administrator, which ran to November, 1849. Now, it is admitted that the surrender and renewal of the patent would not affect, injuriously, the right of Stolley. But his right extended only to the limitation of the renewed patent to 1849, and this he has fully enjoyed. That he had no right beyond this has been shown, under the second ground assumed by defendant's counsel. Stolley must be considered as having taken his license, subject to the power of congress, to extend the patent by a special act, as was subsequently done. It is said that the surrender of the patent is conclusive evidence of its invalidity, and, consequently, that the patentee could have had no rights under the original patent. This inference is not sustained by the facts. The patent had been sustained on all points of objection, by several of the circuit courts, and by the supreme court. The thirteenth section of the act of 1836 provides that "the patent so reissued, together with the corrected description and specifications, shall have the same effect and operation in law, on the trial of all actions hereafter commenced for causes subsequently accruing, as though the same had been originally filed in such corrected form, before the issuing of the original patent." Now, if the patent were invalid, by reason of a defective specification, as contended, still the right of the plaintiff is sustainable. The ground of complaint is for causes accruing subsequently to the re-issuing of the corrected patent, and in all such cases the corrected patent is made to apply, by the act, as though it had been so issued originally. The argument, therefore, that Stolley acquired rights under the invalid patent, which he could exercise under the legislative extension of the right, is unsustainable. He acquired no right beyond the term for which the patent was renewed, on the application of the administrator. The extension granted by congress, it is said, was of the original patent. This is admitted. It was the original patent that was surrendered and corrected after the legislative extension. Under that extension, the patentee could exercise all the rights, and claim all the privileges, conferred by the original patent.

The motion to dissolve the injunction is overruled.

[NOTE. For other cases involving this patent, see note to Gibson v. Van Dresar, Case No. 5,402.]