## No. 4768.

STATE ex rel. T. WHARTON COLLENS *v.* CHARLES CLINTON, Auditor.

The same reason upon which the power of the Legislature rests to increase the number of courts in New Orleans, exists for the power it possesses to decrease the number.

Article 83 of the Constitution of 1868 announces that the General Assembly may establish in New Orleans as many district courts as the public interests may require, wholly irrespective of any particular number of courts. It may diminish or increase that number according to its discretion.

If it be granted that article 83 of the constitution must be considered and interpreted in connection with the other articles of the same instrument on the same subject matter, to wit: articles 81, 84, 97, 110, 122 and 158, it is important not to overlook that article 83, so far as relates to the organization of the district courts of New Orleans, is express and special. It is a well recognized rule that general legislation does not control special legislation on the same subject matter.

All those articles which treat of district courts, tenure of office, removal of judges, etc., as a general subject, must be subordinated to article 83, so far as their provisions are in conflict or inconsistent with the special provisions of article 83, in relation to the district courts of New Orleans. By this rule it is possible to harmonize, and give effect to, each and every one of the articles that have been enumerated, instead of becoming bewildered in a labyrinth of difficulties, vainly endeavoring to limit and circumscribe the special provisions of article 83, by giving a controlling power over them to the general provisions of the other articles.

The abolishment of the court over which the relator presided was a legislative act, which the General Assembly of Louisiana had the constitutional power and right to perform. That act was not an *ex post facto* law. There was no obligation or contract violated. It was simply the exercise of a power and discretion with which the General Assembly was clothed before and at the time the relator came into office.

APPEAL from the Superior District Court, parish of Orleans. *Hawkins, J. Lea, Finney & Miller*, for relator and appellant. *J. Q. A. Fellows, A. P. Field*, Attorney General, for defendant and appellee.

TALIAFERRO, J. The relator prayed for a writ of mandamus ordering the Auditor of Public Accounts to issue to him a warrant for $1250, the amount of one quarter's salary, alleged to be due to the relator as judge of the Seventh District Court of New Orleans, on the thirty-first day of December, 1872, and also for the further sum of $1250 for salary due him on the thirty-first of March, 1873.

The Attorney General, for the Auditor, filed an exception that the relator had no cause of action. The court below made the mandamus peremptory to the extent of ordering the Auditor to issue his warrant in favor of the relator for salary due him prior to the fourteenth December, 1872, but discharged it in so far as it required the Auditor to issue a warrant for salary alleged to be due subsequent to that time. The relator has appealed. From the statement of facts found in the record it appears that the relator was elected judge of the Seventh District Court of New Orleans on November 4, 1872; was commissioned and took the oath of office; that he entered upon the discharge of the duties of the office and continued to discharge those duties until the going into effect of an act of the Legislature passed on the fourteenth of December, 1872, abolishing the Seventh District Court of New Orleans. The relator specially charges that the said act of the Legislature is unconstitutional, void and without effect. The solution of this question is necessary in the decision of this case.

Looking to article 83 of the constitution, we should consider the reason upon which it rests and the purposes which the framers of the constitution intended it should accomplish. There were six district courts in New Orleans when the constitution of 1868 went into effect. The growth of the city, the increase of its population and business, a possible increase of litigation might render it desirable, and it might become important to the public interests that the number of district courts should be increased. On the other hand, a stationary condition or a retrograding state in the amount of population, or even a decrease of litigation might require a decrease in the number of the courts. The same reason upon which the power of the Legislature rests to increase the number of courts in New Orleans exists for the power it possesses to decrease the number. Article 83 announces that the General Assembly may establish as many district courts as the public interests may require. It is within its discretion to determine how many district courts in New Orleans the public interests may require. If it should decide that the public interests require more than seven district courts in New Orleans it may establish more. If it should decide that the public interests require a smaller number of district courts than seven, it has equally the right to establish a smaller number. The constitution vests in the Legislature the power to establish the number of district courts in New Orleans which in the judgment of the Legislature it may determine the public interests requires, wholly irrespective of any particular number of courts. The ever changing state of human affairs imposes upon the Legislature the duty of adapting its legislation to the various phases which the condition of the country and the wants of the community may from time to time assume. Upon this great

principle the eighty-third article of the organic law empowers the General Assembly to increase in New Orleans the number of district courts whenever in its judgment the enforcement of the laws, the ends of justice, and the dispatch of the business of courts may require such increase; and in like manner to decrease the number when in its discretion public interests and public economy may require a decrease.

We are told this article of the constitution must be considered and interpreted in connection with the other articles of the constitution on the same subject matter, the articles 81, 84, 97, 110, 122 and 158. Granted. But let us not overlook an important feature that is presented in this discussion, and that is, that article 83, so far as it relates to the organization of the district courts of New Orleans, is express and special. It is a well recognized rule that general legislation does not control special legislation on the same subject matter. All those articles that treat of district courts, tenure of office, removal of judges, etc., as a general subject must be subordinated to article 83, so far as their provisions are in conflict or inconsistent with the special provisions of article 83 in relation to the district courts of New Orleans. By this rule we harmonize and give effect to each and every one of the articles we have just enumerated, instead of becoming bewildered in a labyrinth of difficulties, vainly endeavoring to limit and circumbscribe the special provisions of article 83, by giving a controlling power over them to the general provisions of the other articles.

Articles 81 and 97 prescribe the manner and form of removing judges, which can only be done by impeachment or address, without any reference to the continuance of the office. These articles contemplate the removal of judges for mal-conduct in office, or for gross neglect in performing their duties, or for other causes. But can this article be invoked in behalf of an incumbent who, *ex necessitate rei*, ceases to exercise judicial functions from the abolishment of the court over which he presided? Article 83, as we have seen, clothes the General Assembly with the power to establish in New Orleans the number of district courts it may deem requisite for the public interests, and that it is not restricted to the establishment of any number. The case under consideration is in point. There were, previous to the act of the Legislature of fourteenth December, 1872, eight district courts of New Orleans. The General Assembly reduced the number to seven by abolishing two of those courts and establishing another. The General Assembly chose to establish seven district courts in New Orleans, deeming that number sufficient to subserve the public interests. There being eight, how else could it make the number seven without abolishing one of those courts? The warrant for so doing is clearly granted not only by the obvious spirit and meaning of that portion of article 83, which relates exclusively to

the district courts of New Orleans, but even by its very letter. The sentence is : " For each district there shall be one district court, except in the parish of Orleans, in which the General Assembly may establish as many district courts as the public interests may require." Does this language mean that the General Assembly has only the power to increase the number of district courts in New Orleans, and is powerless to abolish or dispense with one or more of those courts in order to decrease the number, however much the public interests might demand it? Such an interpretation is surely not logical or sound.

It would seem, from the line of argument employed to deny the right or power of the General Assembly to reduce the number of district courts in New Orleans, that while it is contended that all the articles of the constitution bearing upon the subject of district courts, the term of office of the district judges, etc., should be taken and construed together, still those using that argument rely upon each of those articles of a general character, separately considered, without its connection with all. They say in substance, quoting from article 84 : " The judges of the district courts shall hold their office for the term of four years," therefore the Legislature can not deprive a district judge of his right to hold his office four years. This article separately considered renders the tenure of office of district judges absolutely fixed and irrevocable. The incumbent can not be removed for any cause whatever. because the article reads, " the district judges shall hold their office for four years," and there is not in the article one word that authorizes the office they hold to be vacated. But what becomes of such a construction when we turn to articles 81 and 97 ? We find that the tenure of office for four years is not absolute, but contingent upon good conduct and upon events that might authorize removal by address for reasonable cause.

All the judges of Louisiana hold their offices contingent upon the arising of causes which the constitution declares shall be ground for removal or dismissal. The district judges of New Orleans, by the special provision contained in article 83 of the constitution relating to the district courts of the city, hold office upon a contingency special and personal to them, namely, the happening of a state of things that would authorize the General Assembly in its discretion to reduce the number of courts, when, in such an event, a judge or judges of the district courts of New Orleans, superseded by a legislative act sanctioned by the constitution, would become necessarily *functus officio*. There is in such a case no removal of an incumbent, because when the court he presided over is abolished, the office that appertained to that court ceases to exist and there is no office from which he could be removed. And where is there good and valid ground for complaint in

such a case? It might be characterized as one of the ills or inconveniences of office holding; but that there is a violation of right in such a case can not be maintained. The paramount law of the State confers the power upon the General Assembly to create or abolish district courts in New Orleans in the public interest. If in the exercise of that power an individual should be put to loss or inconvenience by losing the office he held, where is the wrong? Did the office belong to him? Shall his convenience and interests be consulted rather than the public welfare? Is it meet that an unnecessary expense and burden should be kept upon the community to maintain a court not needed in order that the officeholder may be indulged in continuing in office? The judge who is elected or appointed to the office of district judge in the parish of Orleans, is elected or appointed to that office subject to this contingency, that may or may not happen during his term. He accepts the office subject to its vacation, if the General Assembly determine that the public interests require it.

There seems to exist a belief that the incumbent of a public office acquires what is frequently called a vested right, in the sense that he holds an absolute, indefeasible title or right to the office. Surely, while the provisions of the organic law that are intended to give efficiency and stability to the tenure of office, are to be sacredly maintained, we may not disregard other portions of that law, which for special reasons applying to particular offices, render incidentally the tenure of those offices precarious through paramount considerations of the public good.

The relator in this case, it appears, was elected to the office of district judge of the Seventh District Court of New Orleans at the general election in November, 1872. The State Constitution of 1868, containing the provisions in regard to the district courts of New Orleans which we have had under review, was then, as it is now, the paramount law of Louisiana. The abolishment of the court over which he presided was a legislative act, which the General Assembly of Louisiana had the constitutional power and right to perform. That act was not an *ex post facto* law. There was no contract or obligation violated by it. It was simply the exercise of a power and discretion with which the General Assembly was clothed before and at the time the relator came into office. Subject to the exercise of this power he sought and obtained the office which he filled. He has no just ground therefore to set up a violation of his constitutional rights. When the law was enacted which dispensed with the Seventh District Court of New Orleans, he ceased to be the judge of that court, which, when the law abolishing it was promulgated, became a thing of the past. He was no longer authorized to exercise the functions of a judge. He was no longer called

upon to discharge the duties of a district judge. His claim for the salary which appertained to the office as long as it existed, is a just claim. His demand for salary after the office became extinct is not one that can be recognized.

From the operation of just and wholesome laws, real as well as imaginary hardships often arise, and frequently results occur which may cause regret from personal or private considerations. In the present case the act of the Legislature of fourteenth December, 1872, operates adversely to the interests of an able and upright judge; but no exception can on that account be taken to the law itself. Private advantage and private interests must yield to public advantage and public interests. We must give laws their proper force how much soever in isolated cases their operation may be opposed to individual interests.

We conclude that the decree of the court *a qua* in this case was correctly rendered.

Judgment affirmed.

WYLY, J., *dissenting*. I adopt as my dissenting opinion in this case the following argument, submitted by Judge Collens:

The Seventh District Court for the parish of Orleans is one of the conrts created by the State Constitution. At the general election held on fourth November, 1872, the relator was duly elected by the people to be judge of that court for the four ensuing years, and he was duly inducted into office. On the fourteenth December following the Legislature passed an act abolishing this court, and another court entitled the Eighth District Court, which had been created by statute. At the same time and by the same act the Legislature created the Superior District Court. The question is, was the act so far as it undertakes to abolish the Seventh District Court, constitutional? I am convinced that it is not.

I can not admit the rule of interpretation by which a single article of the constitution is made to override and defeat the general and unqualified provisions manifestly intended to insure the independence of the judiciary. I think, on the contrary, that we should seek to give force and effect to every article and disposition of the instrument; and that there is no difficulty in construing article 83 with all the rest so as to give effect to the whole, and moreover to the clear spirit and policy indicated throughout. That article 83 contains a special clause in regard to the creation of additional courts in the parish of Orleans there can be no doubt, but there is nothing else in that article which deprives the judges of the protection given in the most unqualified manner by articles 81, 84, 97, 122, 158, and the other clauses of article

83, defining the tenure, term of office, election, mode and cause of removal, salary, and jurisdiction of the judges.

The relator was elected for four years, and it is provided that during that term of office his territorial jurisdiction shall remain unchanged; that he shall hold his office during that term; that in the meantime his salary shall not be increased or diminished, and that he shall not be removed except by impeachment or suspension. There is no inconsistency to force us to hold that any exception has been made in regard to the courts of the parish of Orleans, unless the expressions of article 83 be made to mean more than they say, and that the Legislature may abolish the constitutional courts as well as create additional ones. The rule of interpretation is the converse of the one adopted by the court. Exceptions should be strictly construed, not enlarged, particularly when they derogate from the general principles and guarantees of right, liberty and independence. The result, from enlarging or adding to the exception, is to make the constitution, in its most vital and paramount elements, self-contradictory, and different in different parts of the State. True, the phrase "until otherwise provided by law," in article 83, refers to the number of courts; but the power of the Legislature, in this respect, is defined by the provision allowing the creation of "as many as the public interests may require." The very fact that the possible necessity of a greater number is expressly foreseen, but no lesser number expressly permitted, confirms this construction.

Even the construction in favor of the power to diminish the constitutional number does not hold good in this case, for it would not apply to the facts. The constitutional number is seven; the eighth was an additional court created by statute. The act of fourteenth December, 1872, is made to abolish these two, the seventh and the eighth, and to create another, the superior court, in their stead. Thus there would be still seven district courts, but the effect is nevertheless that one of the constitutional courts is abolished, though there is no actual diminution of the number. Even such reduction "as the public interests may require" below the seven created by the constitution, is not intended or effected; and yet the seventh one is not the one established by the constitution. The operation of the act plainly is to accomplish indirectly and under a false pretense what could not have been done directly. A judge elected by the people for four years has been legislated out of office, and another legislated into his place. If there were a frank and *bona fide* diminution of the number of courts established by the constitution, or if the superior court were an additional one, there would be no ground for charging the act of the Legislature with being colorable; but by the *modus operandi* the superior court has really become the seventh one, and a palpable, though indirect, evasion of the constitution is perpetrated.

All such devices and colorable attempts have been condemned by the wisest judges of this country. The courts of our sister States have invariably maintained judges in their office during the term for which they were elected or appointed, déspite such legislation as this ; and have decided that changes, such as attempted in this instance, could, if at all, only take effect after the expiration of a constitutional term. 3 Cranch 160; 1 How. 316; 6 Wall. 39; 7 How. 458 ; 13 An. 345 ; 23 Ill. 547; 62 Penn. 345 ; 21 An. 491 ; 23 An. 784 ; 6 Cow. 651 ; 9 Cow. 640 ; 1 Cow. 564; 3 Serj. & R. 155 ; 4 Met. 237 ; 2 Denio 274 ; 14 Wis. 163; 65 N. C. 603; 9 Watts 200; 65 Penn. 76 ; 2 Sand. 640 ; 15 Iowa 538 ; Cooley on Cons. p. 46 ; 4 Ark. 220 ; 6 Serj. & R. 322; 5 Serj. & R. 403; 14 An. 198.