# BROWN v. CLARK, SECRETARY OF STATE
## (No. 1876; June 19, 1934; 34 Pac. (2d) 17)

For the plaintiff there was a brief by *E. E. Enterline, W. B. Cobb, Bryant S. Cromer, A. B. King, Durham & Bacheller, Burt Griggs, Robert R. Rose, Chester Ingle, John J. McIntyre, John D. Dawson, Joseph Garst, Thomas O. Miller, Paul R. Greever, Meyer Rankin, Milward Simpson, H. S. Harnsberger, W. E. Hardin, A. H. Maxwell, Reid & More, A. D. Walton, W. O. Wilson, James A. Greenwood, W. C. Kinkead, Armstrong & Armstrong,* and oral argument by *Messrs. Enterline, Cromer* and *Armstrong.*

218

For the defendant, there was a brief by *Ray E. Lee,* Attorney General; *O. O. Natwick,* Deputy Attorney General, and *William C. Snow,* Assistant Attorney General, of Cheyenne, and oral argument by *Mr. Natwick.*

*Armstrong & Armstrong* by supplemental brief for plaintiff.

KIMBALL, Chief Justice.

When Wyoming became a state it was divided into three judicial districts. Thereafter from time to time the number of districts has been increased until now, under an act of 1927, there are nine, described in section 31-201, R. S. 1931. There has always been one judge for each district. In 1933 the legislature passed an act entitled "An Act to reduce the number of judicial districts and the number of district judges from nine judicial districts and from nine district judges to

seven judicial districts and seven district judges; to re-define the judicial districts of this state * * *." This action is under the declaratory judgment act (§§ 89-2401 to 89-2416), brought by plaintiff, judge of the sixth judicial district, for the purpose of determining whether or not the act of 1933 is constitutional. The case is here on nine reserved constitutional questions.

The act (Ch. 44, Laws of 1933) is in seven sections. Section 1 provides that "for the purposes of this act, on and after the 31st day of December, 1934, and until otherwise provided by law, the State of Wyoming is hereby divided into seven judicial districts," which are then described.

The counties of Laramie, Goshen and Platte shall compose the first districts; Campbell, Johnson and Sheridan, the fourth district; Big Horn, Hot Springs, Park and Washakie the fifth district; Crook, Niobrara and Weston the sixth district; and Converse, Natrona and Fremont the seventh district. The second and third districts are not changed.

The reduction from nine to seven districts is made by abolishing the sixth district which now includes Converse, Niobrara and Goshen Counties, and the ninth district which includes Fremont and Hot Springs Counties. When the law becomes operative Converse and Fremont Counties will be attached to the eighth district which will then be known as the seventh district; Niobrara County will be attached to the seventh district which will then be known as the sixth district; Goshen County will be attached to the first district, and Hot Springs to the fifth. Besides these changes, Campbell County, now in the seventh district, will be attached to the fourth district.

Sections 2, 3 and 6 of the act are not material on the questions presented.

Sections 4, 5 and 7 are as follows:

"Section 4. That no nomination of a candidate for judge of the present Ninth Judicial District, as same is now defined in Section 31-201, Wyoming Revised Statutes, 1931, shall be made at the primary election to be held in the year 1934, and no election for a judge of said Ninth Judicial District shall be held at the general election to be held in the year 1934; and that no nomination of a candidate for judge of the present Sixth Judicial District as same is now defined in said Section 31-203, Wyoming Revised Statutes, 1931, shall be made at said primary election, and no election for a judge of said Sixth Judicial District shall be held at such general election; provided, however, that the electors of any county that has been changed by this Act to a District where an election for District Judge shall be held at the general election in the year 1934, shall be permitted to vote for District Judge within said new district at the primary and general election held in such year, and the election officials charged with that duty shall provide ballots for such primary and general election.

"Section 5. That the Judge of the Eighth Judicial District as hereby abolished shall serve and act as Judge of the Seventh Judicial District until a Judge of the Seventh Judicial District as hereby created is elected and qualified; that the Judge of the Seventh Judicial District as hereby abolished shall serve and act as Judge of the Sixth Judicial District until a Judge of the Sixth Judicial District as hereby created is elected and qualified; and that succeeding judges shall be elected in such districts at the election next preceding the date of expiration of the respective terms of office of each of said Judges.

"Section 7. Section 4 of this Act shall take effect and be in force from and after its passage, and all other sections of this Act shall take effect and be in force from and after the 31st day of December, A. D. 1934."

In considering the reserved questions we must keep in mind a few accepted principles that serve as guides in determining whether or not the legislature has acted

in excess of its powers under the state constitution. Unless it clearly appears that a challenged act is in conflict with the constitution, it must be upheld, and all doubts must be resolved in favor of its constitutionality. State ex rel. v. Snyder, 29 Wyo. 163, 179, 212 P. 758. The legislature may do anything within the domain of legislation which is not expressly or by necessary implication inhibited. Budge v. Commissioners, 29 Wyo. 35, 44, 208 P. 874. Constitutional restrictions on legislative power are not to be enlarged by construction beyond their terms. State ex rel. v. Irvine, 14 Wyo. 318, 389, 84 P. 90. The legislature is ordinarily the sole judge of the wisdom and expediency of statutes. State v. W. S. Buck Merc. Co., 38 Wyo. 47, 56, 264 P. 1023; White v. Hinton, 3 Wyo. 753, 30 P. 953, 17 L. R. A. 66.

Counsel for plaintiff seem to think that the case presents important questions affecting the independence of the judiciary, and the separation of the powers of government into three departments. It seems, however, that a legislature, in increasing or decreasing the number of judicial districts, exercises a common and proper legislative function. See 7 R. C. L. 983. There is no reason for claiming that the power should be conferred on the courts or that the courts can interfere with its exercise by the legislature except in so far as may be necessary to prevent violations of constitutional restrictions that limit the power.

We come now to a consideration of the several reserved questions.

By question 8 we are asked: "Is Chapter 44 unconstitutional and void because of indefiniteness, ambiguity and uncertainty as to the whole chapter and particularly Section 5 thereof, when read in connection with the other sections of said chapter?"

The supposed indefiniteness arises from the fact that section 5 refers to the eighth and seventh judicial districts as being "hereby abolished." This is not an accurate statement. The districts abolished are the sixth and ninth. The boundaries of the seventh and eighth districts are changed and the districts renumbered, as shown above. The numbering of districts is a matter of convenience and not of vital importance. See State ex rel. v. Draper, 50 Mo. 353. The purpose of section 5 is to make it clear that the judges of the present seventh and eighth districts will continue as judges of the districts which under the new law will be known as the sixth and seventh districts respectively. Section 1 and 4 of the act show what districts are abolished. When the whole act is considered there is no such indefiniteness as would justify a holding that it is void. See 25 R. C. L. 810; 59 C. J. 606.

By reserved questions 1 and 6 we are asked if the act in question is unconstitutional in that it purports to reduce the number of judicial districts from 9 to 7 in violation of section 21 of article 5 of the state constitution. The plaintiff contends that by the provisions of the mentioned section of the constitution the legislature is prohibited from enacting any law that reduces the number of judicial districts. Section 21, and the two preceding sections, are copied below.

Section 19, Article 5. "Until otherwise provided by law, the state shall be divided into three judicial districts, in each of which there shall be elected at general elections, by the electors thereof, one judge of the district court therein, whose term shall be six (6) years from the first Monday in January succeeding his election until his successor is duly qualified.

Section 20, Article 5. "Until otherwise provided by law, said judicial districts shall be constituted as follows: District number one shall consist of the counties of Laramie, Converse and Crook. District number two shall consist of the counties of Albany, Johnson and

Sheridan. District number three shall consist of the counties of Carbon, Sweetwater, Uinta and Fremont.

Section 21, Article 5. "The legislature may from time to time increase the number of said judicial districts and the judges thereof, but such increase or change in the boundaries of the district shall not work the removal of any judge from his office during the term for which he may have been elected or appointed; provided the number of districts and district judges shall not exceed four until the taxable valuation of property in the state shall exceed one hundred million dollars ($100,000,000)."

Looking first at sections 19 and 20, we find that "until otherwise provided by law" the state is divided into three judicial districts. Here is clear authority for the legislature to increase or diminish the number of districts mentioned. When we come to examine section 21 we are looking for restrictions on the legislative power recognized in the two preceding sections. We find no express restriction, except as to the removal of a judge from office and as to increases before the taxable valuation of property exceeds the stated amount. We find the statement that "the legislature may from time to time increase the number of said judicial districts," a clause that seems to add nothing to the power already recognized in the preceding sections. The plaintiff contends that from this clause arises the necessary implication that the legislature is prohibited from making any reduction in the number of districts. The rule that *expressio unius est exclusio alterius* is invoked. We have said that this rule must be applied with caution. Chicago & N. W. Ry. Co. v. Hall, (Wyo.) 26 P. (2d) 1071, 1073. If it has any application in the present case, it cannot lead to a construction that would prohibit the legislature from reducing the number of districts added by the acts of previous legislatures. When in section 21 it is said that the legislature may from time to time increase

the number of districts, the "number" in mind is three. The thing expressed is the power to increase that number. The thing that should be excluded, if the mentioned rule or construction be applied, is the power to reduce that number. It may be, therefore, that the legislature by necessary implication is prohibited from reducing the number of districts below three.

Plaintiff in effect asks us to hold that section 21 means that any legislature has the power to increase the number of judicial districts by an irrepealable statute, although it is generally thought that there is no mode by which a legislative act can be made irrepealable except it assume the form and substance of a contract. See Bloomer v. Stolley, 5 McLean, 158, 161; Cooley, Const. Lim. (8th ed.) 246.

Section 21 refers not only to increases but also to "change in the boundaries." Counsel for plaintiff say that neither increases in the number of districts nor changes in the boundaries of existing districts would work the removal of a judge, there being no law requiring a judge to live in his district. If that be so, it would seem that the framers of the section must have had in mind some power in the legislature to do more than increase the number of districts and change the boundaries of existing districts. They must have had in mind the power to abolish districts if, as counsel argue, that is the only kind of a change that would remove a judge from office. Having had in mind the abolishing of districts, they prohibited those changes that would work the removal of a judge during his term. This would seem to imply permission to abolish districts if no judge is thereby removed from office.

In Ex parte Johnson, 203 Ala. 579, 84 So. 803, the court, considering an act abolishing a judicial circuit, said: "Indeed, the provision of section 155 of the constitution that the right of a judge to his full term shall

not be affected by any change made in any circuit necessarily implies that changes in circuits were authorized and were to be anticipated; the inhibition being against disturbance of the term of the judge before its expiration."

Our conclusion that the constitution does not prohibit a decrease in the number of judicial districts as established by preceding legislatures is supported by the authorities that throw light on the subject. The cases show that the conclusion is reinforced by a compelling public policy.

In Coleman v. Campbell, 3 Shannon's Tenn. Cas. 355, it was insisted that the power of the legislature "to ordain and establish circuit and chancery courts," did not include the power to abolish existing courts, but that it only extended to adding to or increasing them. The court said:

"If this position be correct, it may follow that at some future time, the legislature upon a real exigency might ordain and establish several additional circuit and chancery courts in different localities, which courts could not afterwards be abolished, even if the change in the country should make it ever so plain that they had become unnecessary and a useless burden. It is even possible, under this view, that we might have a legislature which would determine that the public good required a separate circuit and a separate chancery court in every county in the state, * * *. Of course such a state of things is only possible—yet it would result that a subsequent legislature would have no power to so ordain and establish courts as to diminish their number, their only power being that of increasing it. The result would follow from giving the words 'ordain and establish' their literal meaning, and also assuming that the power thus given to 'ordain and establish' excludes any other power by the legislature. We are unable to yield our assent to either of the positions."

And see McCulley v. State, 102 Tenn. 509, 53 S. W. 134, 46 L. R. A. 567; State ex rel. v. Clinton, 26 La. Ann. 406, 409.

By the constitution of Washington it was provided that "there shall be in each of the organized counties of the state a superior court," with a proviso that until otherwise directed by the legislature one judge only should be elected for each of several specified groups of counties. In State ex rel. v. Rusk, 15 Wash. 403, 46 P. 387, it was conceded that the construction best warranted by the language of the constitution was that the legislature had no jurisdiction as to superior court districts except to declare when the grouping contained in the proviso should terminate and the general provision given effect. But that construction was not adopted. The court said, among other things, that "the technical construction would prevent the legislature from taking steps which the highest considerations of public policy and the economical administration of governmental affairs might require. Thereunder the legislature would be powerless to reduce the number of judges in the state by enlarging any group of counties entitled jointly to elect a judge, however much the business therein might decrease, and however clear it might be that an election by the larger group would subserve the public interests."

In State v. McBride, 29 Wash. 335, 70 P. 25, the court had occasion to consider the meaning of a section of the Washington constitution which provided that the supreme court should consist of five judges, and that: "The legislature may increase the number of judges of the supreme court from time to time." After some discussion of the meaning of the phrase "from time to time," the court said, among other things:

"But whatever may be the technical meaning of the words, they certainly cannot be held to mean that

the legislature may not decrease the number of judges after increase thereof. If, therefore, the legislature has power to increase the number of judges as occasion or convenience requires, and there is no restriction upon a decrease, except below five, it follows that a decrease may be had to this minimum when necessity or occasion requires, of which necessity or occasion the the legislature is the exclusive judge."

In Ailman v. Edwards, 55 Kan. 751, 42 P. 366, 30 L. R. A. 149, the supreme court of Kansas upheld a statute which abolished three judicial districts by changing the boundaries of the other districts. The constitution provided that "the state shall be divided into five judicial districts in each of which there shall be elected a district judge who shall hold his office for the term of four years." The only express authority for changing districts was that "provision may be made by law for the increase of the number of judicial districts whenever two-thirds of the members of each House shall concur." It was held, not only that the legislature had power to abolish districts created by previous legislatures, but that it could do so without a two-thirds vote.

It is contended that the act of 1933 shortens the terms and diminishes the salaries of the judges of the present 6th and 9th judicial districts. The point is raised by reserved questions 2 and 5, which refer to Section 21 of Article 5, above, which contains the provision that an "increase or change in the boundaries of the district shall not work the removal of any judge from his office during the term for which he may have been elected or appointed," and Section 17 of Article 5 which provides that "compensation shall not be increased or diminished during the term for which a judge shall have been elected."

The term of an elected district judge is "6 years from the first Monday in January succeeding his

election until his successor is duly qualified." Section 19 of Article 5, copied above. The terms of the judges of the present sixth and ninth districts, abolished by the act, will expire the first Monday, the seventh day, of January, 1935. The act declares that it (except section 4) shall take effect "on and after," or "from and after" December 31, 1934. If it takes effect before January 7, 1935, it will shorten by a few days the constitutional terms of office of the judges of the abolished districts. The attorney general concedes that the act, if put in force at the time therein provided, is void. The only question, therefore, is whether we should sustain the act by holding that its operation must be postponed until January 7, the time when it may become effective without conflict with the constitution.

This court has frequently been confronted with the necessity of limiting the operation of a statute to avoid a conflict with the constitution. See Commissioners v. Woods, 18 Wyo. 316, 106 P. 923, 107 P. 753; Salt Creek Trans. Co. v. Commission, 37 Wyo. 488, 496, 263 P. 621, and cases cited. It is not at all uncommon for the court by construction so to limit a statute as to make it operative on only those persons, things or situations to which it may apply without violating the superior law. We see no good reason for holding that this power to limit the operation of a statute may not be properly exercised in the present case by postponing the operation of the act of 1933 until the first Monday in January. The legislature intended that the act should be in operation on that date but, in ignorance of its powers, declared that it should be in operation a few days earlier. The act, in so far as it provides that it shall be effective from December 31 to January 7, is held to be unconstitutional, but this partial invalidity does not warrant a declaration that the act is void.

The constitution of Texas required that two terms of the district court should be held each year in each county. The legislature passed an act which, if effective at the time as therein provided, would have deprived a county of one of its annual terms of court, and the act for that reason would have been void. In Ex parte Murphy, 27 Tex. App. 492, 11 S. W. 487, the act was upheld by postponing its operation. The court said that:

"In construing an act of the legislature, it is the duty of the court to so interpret the legislative intent as to harmonize the provisions of the act with the constitution, if this can be done reasonably. It must be presumed that the legislature did not intend to disregard the above-cited provision of the constitution * *. If such was the intent, the act would be void. Notwithstanding the emergency clause in said act * * * we feel justified in holding that it was not the legislative intent that said act should immediately take effect, but that it should become operative only at a time when it would not deprive any county in the district of two terms of court."

The rule announced in Ex parte Murphy has been applied many times by the courts of Texas. See Engelman v. Anderson (Tex. Civ. App.) 244 S. W. 650. See, also, Ex parte Johnson, 203 Ala. 579, 84 So. 803.

It has been held that a statute is not void because of the invalidity of a section that declares that the act shall become effective immediately (Riley v. Carrico, 27 Okla. 33, 110 P. 738), or that its operation shall be postponed (Gottstein v. Lister, 88 Wash. 462, 153 P. 595).

By the act of 1933, Goshen County will not become a part of the first judicial district until the first Monday in January, 1935, but the electors of that county are permitted to vote for district judge at the primary and general elections to be held this year. The same

condition obtains with reference to Campbell County which becomes a part of the fourth district. Reserved questions 3 and 9 ask if this is forbidden by either Section 27 of Article 3 or Section 19 of Article 5 of the constitution. The constitutional provisions referred to are:

"Section 27, Article 3: "The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: * * * the opening or conducting of any election or designating the place of voting * * *. In all other cases where a general law can be made applicable no special law shall be enacted."

Section 19 of Article 5, copied above, which declares that the state shall be divided into three districts, "in each of which there shall be elected at general elections, by the electors thereof," one judge etc.

We cannot see that these questions suggest anything of substance opposed to the validity of the act. No authorities are cited. Although the electors of Goshen County will not be residents of the first judicial district when the next primary and general elections are held, they are and will be residents of territory that will be in that district when the elected judge takes office. Indeed, it would seem not only proper, but necessary, that the electors of Goshen County and Campbell County should be permitted to vote as the act provides. Otherwise, it would be hard to see how it could be said that the elected judges were chosen by the electors of the district as provided by section 19 of article 5.

The arguments have not made clear the supposed application of section 27 of article 3. All we need say is that we do not think the act in question contains any provision that can be held to be a local or special law prohibited by that section.

The remaining questions, numbered 4 and 7, have reference to the transfer of counties from the abolished

districts to districts in which a judge will not be elected at the coming election. For example, Hot Springs County, in the present ninth district, will become a part of the fifth district under the jurisdiction of a judge in whose choice the people of the transferred county have had no voice. The constitutional provisions referred to are section 7 of article 4, and section 11 of article 5, copied below.

Section 7, Article 4: "When any office from any cause becomes vacant, and no mode is provided by the constitution or law for filling such vacancy, the governor shall have the power to fill the same by appointment."

Section 11, Article 5: "The judges of the district courts may hold courts for each other and shall do so when required by law."

The act does not create any vacancy in office within the meaning of section 7 of article 4. It is suggested that it appoints judges for the transferred counties. This is not a correct view. The judges have been elected to preside over districts which may be changed. By the act in question the legislature simply changes the boundaries of the districts under the power which, as already pointed out, is recognized by section 21 of article 5 of the constitution. This power has been freely exercised by past state legislatures and we have no reason for believing that it has ever been questioned except in the present case. See, Ailman v. Edwards, 55 Kan. 751, 42 Pac. 366, 30 L. R. A. 149; McCulley v. State, 102 Tenn. 509, 53 S. W. 134, 46 L. R. A. 567; State ex rel. v. Gardner, 218, Mo. App. 217, 265 S. W. 996; Commonwealth v. Gamble, 62 Pa. St. 343, 352, dicta.

We do not think the power of the legislature to change the boundaries of districts is at all restricted by section 11 of article 5 providing that judges may or shall hold court for each other.

The reserved questions will be answered in accordance with our conclusions, as expressed above, that chapter 44 of the laws of 1933 is not void for any reason stated in the questions.

BLUME and RINER, JJ., concur.