JAMES ROBINSON, appellant, *v.* THOMAS CRUMMER, appellee.

*Appeal from Jo Daviess Co. Court.*

To maintain an action for forcible entry and detainer under the statute, two things must concur : *first,* the possession must be illegally or forcibly taken, which constitutes the entry ; and *second,* the possession so taken must be withheld, which constitutes the detainer.   The rule of the Common Law is changed.

The action of forcible entry and detainer is purely a civil remedy, the sole object of which is to regain a possession which has been invaded, and the only judgment that can be rendered is, that the plaintiff have restitution of the premises of which he has been unjustly deprived.

FORCIBLE ENTRY AND DETAINER, commenced before a justice of the peace in Jo Daviess county, by Crummer against Robinson and others.   A verdict was rendered in favor of the plaintiff, and an appeal was taken to the County Court.   The cause was tried in the latter Court by a jury, on the 17th day of November, 184̇. The jury could not agree upon a verdict, and another trial was held on the 17th day of September, 1847, when a verdict was rendered for the plaintiff, and a writ of restitution was awarded by the Court.

The record shows the following facts as furnished by a bill of exceptions taken on the trial :

Wm. Thornburn, a witness for the plaintiff, testified that the plaintiff settled where he now lives, in 1835 or 1836 ; that he built his cabin in 1835 and moved into it in 1836 ; that this was before the Government survey ; that the settlers there were governed in designating their claim by a survey of township lines run by one Stephenson.   The plaintiff had his claim run out by a surveyor and marked it off by blazed trees on the· surveyed line, and run lines starting from the township line.   It included, according to that survey, the south east quarter of section seventeen, township twenty seven north, range two east.   The land described in complaint is a part of it.   His residence was on the same quarter according to that old survey ; but the Government

survey made in 1841, placed the plaintiff's house on section sixteen. The plaintiff's improvements were all on section sixteen, but in 1835 or 1836, he cut some logs on the tract in dispute, and in 1838 made some lime on the same tract to be used in his house. This was all the improvement ever made upon the tract by the plaintiff, and his improvements since the Government survey are all on section sixteen. In 1838 or 1839, the defendant, Robinson, told the witness that the line between him and the plaintiff was along the ridge near where the line of plaintiff's survey run in 1836 or 1837 ; that said line is the same described in this complaint, and the same which he, witness, helped to make in 1836 or 1837. Robinson told him further that it was agreed between them, that this line was the line of plaintiff's claim. The plaintiff made his claim a year and a half before Robinson made his claim.

The admission of all and every part of the above testimony was objected to by the defendant, but it was allowed by the Court and exception's taken.

Barton testified for the plaintiff, that he helped him make his claim in 1835, and was with the defendant, Robinson, in 1837, when he made his claim ; that the line on the ridge described in the complaint then separated the parties, and they acquiesced in that line until after the Government survey. This latter survey varied from the old one the witness helped to make, about 200 yards, and all the plaintiff's improvements, with his house, fell on section sixteen. The tract described in complaint was covered with timber and not susceptible of cultivation. The witness further testified, that Robinson, one of the defendants, in 1837, or 1838, settled on the south east quarter of section seventeen, part of which is described in the complaint, and has ever since lived upon it. Shortly after Robinson settled there, but before the Government survey, he pointed out to the witness the line along the ridge, spoken of by Thornburn, as the east line of his claim.

The defendants objected to all of the testimony of this

witness, which objection was overruled by the Court and the defendants excepted.

James Crummer, a son of the plaintiff, testified in substance as the last two witnesses, as to acts of settlement by his father, on what was supposed to be section seventeen, before the Government survey, and·stated in addition, that in the spring of 1841, immediately after the Government survey, James Robinson, one of the defendants was chopping on the tract of land described in the complaint, and that he came to the plaintiff and told him that said tract fell upon the quarter section where he, Robinson, lived, and that he, Robinson, would have to enter it, and forbid the plaintiff from chopping or doing any thing on said tract. Robinson went away, but soon returned, and he and the plaintiff agreed that neither should cut timber on the tract described in the complaint until the land should be sold by the United States. The plaintiff did nothing afterwards on the tract in controversy. The Government land sales took place in the spring of 1847, long after this suit was commenced. Some little time before this suit was commenced, his father requested Robinson to permit him to go on the tract and make rails, and something was said by the plaintiff about securing the defendant, Robinson, for the entry money. This was on the 9th of December, 1845. The next Monday, the witness saw the defendants cutting and hauling off timber from the tract; there were twelve men and nine yoke of oxen engaged; they were very boisterous, and the witness thought they had liquor.

Joseph Crummer, another of the plaintiff's witnesses, testified substantially as did the last witness.

Thomas Barton testified for the plaintiff, that he saw the defendant chopping and hauling away timber on the ground in dispute, but don't say when; that they had two yoke of oxen and there was some noise made when they felled trees. Some of the defendants were saucy to the witness, and cracked jokes at his expense.

Campbell testified for the plaintiff, that he helped Robin-

son, one of the defendants, cut and haul timber off from the tract in dispute, and that Robinson told him he wanted to get the timber off to save a lawsuit, and spoke of an injunction.

Wm. Crummer, another son of the plaintiff, also testified to certain cutting of timber for his father on the tract in dispute previous to the Government survey, but added nothing in particular to the statements of the preceding witness.

John Q. Adams also testified for plaintiff as to Robinson's agreement with the plaintiff, after the Government survey, to forbear cutting timber on the tract in dispute until after the public sale of the land, but added nothing material to that testified by the preceding witnesses, except that in 1843 he expressed a willingness not to chop timber there.

Wm. J. Robinson testified, that in May or June, 1843, after the Government survey had taken place, the plaintiff told him that he no longer had any claim to the tract in dispute, but that he had claimed it before the Government survey; that Robinson would have to enter it now as it fell on his quarter, and that he had the best right to it.

Archibald Robinson testified for the defendants, that in 1842 he heard the plaintiff tell James Robinson, one of the defendants, that now since the Government survey had taken place, the tract in dispute had fallen to the said Robinson, and that he (the plaintiff) had been so advised by his lawyer, and told Robinson that he could do what he pleased with it, and that he (the plaintiff) whoud have nothing to do with it.

The foregoing is all the evidence given on the trial, and so stated in the bill of exceptions.

*V. H. Higgins,* for the appellant.

*S. T. Logan,* and *C. Gilman,* for the appellee.

The Opinion of the Court was delivered by

Treat, C. J.   A new trial should have been granted. The evidence did not make out a case of forcible entry and

detainer. There may have been a wrongful entry on the constructive possession of Crummer, but there was not such a continuing in possession as to constitute a detainer. The possession was disturbed, but not withheld. There was not an actual dispossession. The acts complained of were only trespasses, for which the law provides a different but an adequate remedy. To maintain an action for a forcible entry and detainer under our statute, two things must concur: *first*, the possession must be illegally or forcibly taken, which constitutes the entry; and *second*, the possession so taken must be withheld, which constitutes the detainer. At Common Law the rule was different. The party was liable to indictment, and might be convicted of either a forcible entry, or a forcible detainer, each being considered a distinct offence. Not so under our statute. The proceeding is purely a civil remedy, the sole object of which is to regain the possession that has been invaded. Damages are not recoverable in this action, but the only judgment for the plaintiff is, that he have restitution of the premises of which he has been unjustly deprived. If there was not a withholding of the possession, there is nothing to be restored, and the proceeding is wholly unnecessary; the party can take the possession without the aid of legal process. To permit him under such circumstances to bring this action and obtain a judgment of restitution, would be a useless ceremony. Some right is to be ascertained by the judgment of a Court and enforced by its process.

The judgment of the County Court is reversed with costs, and the cause is remanded for further proceedings.

*Judgment reversed.*