HUGHES *v.* DUNDEE MORTGAGE TRUST INVESTMENT Co., Limited.
(No. 1,065.)

*(Circuit Court, D. Oregon. March 31, 1886.)*

1. ACTION ON AN ENTIRE DEMAND.
    Where an action is brought on a part only of an entire and indivisible demand, the pendency thereof may be pleaded in abatement of another action on the remainder, and a judgment in either may be pleaded in bar of the other.
2. CASE IN JUDGMENT.
    H. was appointed the attorney of the defendant, a foreign corporation engaged in loaning money in Oregon on note and mortgage, and on February 12, 1883, after being so employed about eight years, he brought an action against said corporation to recover the sum of $21,258.80, the alleged value of his services for that period, without specifying any particular service, except attending to two suits, for which he claimed the sum of $755.80, and had judgment thereon for $8,407.61, and $390.05 costs and disbursements; and afterwards, on September 5, 1884, he brought this action against said corporation to recover the sum of $11,222.74, with interest from January 31, 1880, for services as an attorney during the period covered by the former action, in making and delivering to the defendant 554 certificates of the title to lands offered to the latter as security for loans, the sum demanded being equal in amount to 1 per centum of the moneys loaned on the lands included in said certificates. *Held,* that the claim now sued for was a part of an entire and indivisible demand and cause of action, existing when the former action was brought, and that the judgment therein is a bar to this action.
3. ATTORNEY AND CLIENT.
    The services of a standing or regularly appointed attorney are usually rendered pursuant to some general agreement or understanding, and whatever is due therefor at the expiration of the service or employment constitutes but one cause of action; and courts should be careful in such cases, in the application of a rule against splitting up demands, not to leave any loop-hole through which an attorney may be tempted to harass and oppress his client with vexatious or spiteful litigation.

Action to Recover Attorney's Fees.

*Ellis G. Hughes, pro se.*

*Earl C. Bronaugh,* for defendant.

DEADY, J. This action was commenced on September 5, 1884, to recover the sum of $11,222.74, with interest from January 31, 1880, to date, amounting in all to $15,350.19. It is alleged in the complaint that the plaintiff is a citizen of the state of Oregon, and the defendant is a corporation duly formed under the laws of Great Britain, having its principal office at Dundee, Scotland, and is now lawfully engaged in business in Oregon, and that the Oregon & Washington Trust Investment Company was, from January 1, 1875, to January 31, 1880, a corporation also duly formed under said law, engaged in loaning money in Oregon and Washington on note and mortgage, with an agency at Portland; that during said period plaintiff was a practicing attorney at law, resident at Portland, and at the request of said trust investment company, and for its use and benefit, did "make and issue to it in writing" 554 separate certificates, whereby he became responsible to said corporation that the title to the real property mentioned therein was in the party seeking a loan thereon, and that the same was free from all liens and incumbrances, for which service and responsibility said trust investment company "undertook and agreed to pay the plaintiff the reasonable value" thereof, which is 1 per centum on the amount of the loans made on said certificates, namely, $1,122,274, and that said trust investment company, on January 31, 1880, by reason of the issuing of said certificates, became and was indebted to the plaintiff in the sum of 1 per centum on said amount, namely, $11,222.74; that on January 31, 1880, said trust investment company amalgamated with the defendant, and assigned all its property thereto, in consideration whereof the latter "did assume and agree to pay all and every of the debts and liabilities" of the former, including the debt due the plaintiff; but that neither of said corporations has paid the same, or any part thereof, and the whole is now justly due him from the defendant.

Among other defenses, the answer of the defendant contains the following: The plaintiff ought not to have or maintain this action because, on February 12, 1883, he commenced an action against the defendant in this court, alleging in the complaint therein that said trust investment company did, about January 1, 1876, appoint the plaintiff its attorney, to attend to its business in Oregon and Washington, pursuant to which the plaintiff did, between January 1, 1876, and January 1, 1880, render service to said corporation "in consulting and advising it about its business, and other acts and attendance in and about said business, at its request, of the value of $2,500 per annum;" that about January, 1880, said corporation amalgamated with the defendant, who thereupon "assumed its indebtedness and liabilities, including its indebtedness to plaintiff," and that "thereafter the plaintiff rendered services to the defendant as its attorney, and paid out money for it, up to January 1, 1882," the value of which amounted to $2,500; that it was also alleged in the complaint in said action that the defendant was indebted to the plaintiff for serv-

ices rendered in two certain law suits in the further sum of $755.80, and that the aggregate of defendant's liability to plaintiff on these several accounts was $21,258.80; that the defendant made a defense to the action, and on the trial thereof the plaintiff had judgment for the sum of $8,407.61, and $390.05 costs and disbursements, which judgment remains in full force and effect. It is then alleged in the defense that the service mentioned in the complaint herein was rendered before the commencement of said former action, and that whatever sum of money may be due the plaintiff for or on account of such service was due prior to the commencement of said former action; and that all the service alleged in the complaint herein to have been rendered to the trust investment company, and to this defendant, was performed under an appointment of plaintiff as the attorney of the trust investment company and this defendant, as alleged in the complaint in said former action; wherefore the defendant says that the plaintiff is "by said former judgment forever barred from recovering herein."

To this defense the plaintiff demurs, for that it does not contain facts sufficient to constitute a defense; and the point relied on in the argument in support of it is "that it does not appear that the claim or account of the indebtedness of the trust investment company made in the former action was placed [put] in issue, litigated, or passed in to judgment therein." The point was also made that the judgment in the former action was suspended by operation of the writ of error sued out thereon by the defendant, but was afterwards specially withdrawn.

In support of the point the plaintiff cites 1 Tidd, Pr. 685; *Russell* v. *Place*, 94 U. S. 610; and Bigelow, Estop. 587–589. It is apparent from this that the plaintiff has misconceived the nature of this plea or defense. It is not, as he appears to think, a plea of a former recovery or adjudication of the claim sued on here, and that, therefore, it must show, with the certainty required in pleading an estoppel, that such claim was made and passed on in said former action. But the defense is a plea that the plaintiff brought a former action on the same cause of action,—the same contract or account,—by reason of which he is barred from maintaining another action thereon, or any part thereof, although such part may not have been actually set up in the other action.

This defense is not an estoppel, but a bar, founded on a rule of public policy, as just and expedient as the statute of limitations. This rule declares that no one ought to be twice vexed for the same cause,—*nemo debet bis vexari pro eadem causa*. It assumes that it is better that a plaintiff who wantonly or negligently splits a claim into parts for the purpose of suit should lose one of them than that the adverse party should be needlessly harassed by litigating, in detail, matters that could and should have been determined in one action. As was said by Mr. Justice NELSON, in *Guernsey* v. *Carver*, 8 Wend.

494, "the law abhors a multiplicity of suits," and therefore, if a party bring an action on a part only of an entire and indivisible demand, the pendency thereof may be pleaded in abatement of another action on the remainder, and a judgment in either may be pleaded as a bar of the other. *Bagot* v. *Williams*, 3 Barn. & C. 235, S. C. 10 C. L. 115; *Logan* v. *Caffrey*, 30 Pa. St. 196; *Warren* v. *Comings*, 6 Cush. 103; *Lucas* v. *Le Compte*, 42 Ill. 303; *Farrington* v. *Payne*, 15 Johns. 432; *Guernsey* v. *Carver*, 8 Wend. 492; *Bendernagle* v. *Cocks*, 19 Wend. 207; *Beekman* v. *Platner*, 15 Barb. 551; *Reformed P. D. Church* v. *Brown*, 54 Barb. 191.   *Secor* v. *Sturgis*, 16 N. Y. 548; *Baird* v. *U. S.*, 96 U. S. 430.

In *Secor* v. *Sturgis, supra*, 554, it is said:

"The principle is settled beyond dispute that a judgment concludes the rights of the parties in respect to the cause of action stated in the pleadings on which it is rendered, whether the suit embraces the whole or only a part of the demand constituting the cause of action.   It results from this principle, and the rule is fully established, that an entire claim, arising either upon a contract or from a wrong, cannot be divided and made the subject of several suits; and if several suits be brought for different parts of such a claim, the pendency of the first may be pleaded in abatement of the others, and a judgment on the merits in either will be available as a bar in the other suits."

In *Baird* v. *U. S., supra*, 432, Mr. Chief Justice WAITE, speaking for the court, says:

"It is well settled that where a party brings an action for a part only of an entire and indivisible demand, and recovers judgment, he cannot subsequetly maintain an action for another part of the same demand.   *Warren* v. *Comings*, 6 Cush. 103.   Thus, if there are several sums due under one contract, and a suit is brought for a part only, a judgment in that suit will be a bar to another action for the recovery of the residue."   See, also, to the same point, *Bendernagle* v. *Cocks, supra*, 215.

Occasionally the application of this rule involves a nice question. The case of *Secor* v. *Sturgis, supra*, may be taken as one that leans, if at all, to the plaintiff's side of the question.   Three brothers, under the name of Chas. A. Secor & Co., carried on the business of ship carpenters and chandlers in a house in New York, the former being conducted on one floor thereof, under the management of two of the parties, and the latter on another floor, by the third one.   Separate books of account were kept of the two departments, and separate bills rendered therefor.   Under these circumstances, carpenter work and articles of ship chandlery were done and furnished to the brig Leverett, for the defendant.   The court held that the demands were distinct, and that a judgment in an action for one of them was no bar to an action on the other.   In the course of the opinion it was said:

"The true distinction between demands or rights of action which are single or entire, and those which are several and distinct, is that the former immediately arise out of one and the same act or contract, and the latter out of different acts or contracts.   Perhaps, as simple and safe a test as the subject admits, by which to determine whether a case belongs to one class or the

other, is by inquiring whether it rests upon one or several acts or agreements. In the case of torts, each trespass or conversion of fraud gives a right of action, and but a single one, however numerous the items of wrong or damage may be. In respect to contracts, express or implied, each contract affords one, and only one, cause of action."

The case of *Baird* v. *U. S., supra,* arose on a contract to furnish the United States 15 locomotive engines, in 1864, at a fixed price, with the addition of any advance that might take place in the cost of labor and materials used in their construction after November 9, 1863, and any damage resulting from the preference given in this order over other contracts. The engines were duly delivered, and the fixed price paid. A claim was also presented for the advance in labor and materials, which was audited, and about two-thirds thereof allowed and paid. Subsequently an action was brought in the court of claims for the damages sustained in giving preference to the government order, in which judgment was given against the United States. On May 2, 1870, another action was brought in the court of claims to recover the "residue of the amount of the advance in labor and materials," in which, although the court found that the advance, over and above the amount paid, was the sum claimed, there was judgment for the defendant. Thereupon the claimant appealed to the supreme court, where the judgment was affirmed, the court holding that the claims for construction, advance, and damage were all embraced in one contract, and constituted but one demand and cause of action. In the course of the opinion Mr. Chief Justice WAITE said:

"Here was a contract by which the government was bound to pay for the engines in accordance with terms agreed upon. The entire price to be paid was not fixed. A part was contingent, and the amount made to depend upon a variety of circumstances. When the former action was commenced in the court of claims the whole was due. Although different elements entered into the account, they all depended upon and were embraced in one contract. The judgment, therefore, for the part then sued upon, is a bar to this action for the 'residue.' "

In *Reformed P. D. Church* v. *Brown, supra,* the defendant's testator had agreed in writing to pay the sum of $100 a year for the support of a minister of the gospel, in the township of Westfield, Staten island. At the testator's death four years' subscription were due on the writing, on which nothing had been paid. The plaintiff then sued the defendant, as executor, for the first $100 due on the writing, and had judgment therefor, and on the day following brought an action to recover the remaining three years' subscription. The court held that the judgment in the first action was a bar to the second one, saying:

"In order to avoid multiplicity of actions, the law forbids that a cause of action shall be split up for the purpose of bringing several actions. But when several claims, payable at different times, arise out of the same contract or transaction, separate actions can be brought as each liability inures. Still, however, if no action is brought until more than one is due, a recovery in the one first brought will be an effectual bar to a second action brought to recover the other claims that were due when the first was brought."

Taking the application of the rule, as made in these cases, it is clear that the plaintiff's demand or cause of action against the defendant for services rendered the trust investment company, as an attorney, and the demand or cause of action for similar services rendered itself, were, as they existed on February 12, 1883, the day on which the former action was commenced, entire and indivisible. Shortly, it appears from the plea that the plaintiff alleged in the former action, as the cause thereof, that he was appointed or employed as the standing attorney of the trust investment company from January 1, 1876, to January 1, 1880, when it was merged in the defendant, for whom he continued to act in the same capacity until January, 1882.

Assuming, as I have, that there was a distinct contract or employment by each corporation, though much might be said, if it was material, in support of the proposition that the service of the plaintiff was a continuous one, the latter corporation being in fact the legal prolongation of the other, still the plaintiff's demand or cause of action for the service rendered each corporation was an entire and indivisible one. Both these demands were joined in the action of February 12, 1883, and whatever was then due from the defendant on account of such services was a part of the causes of action on which said action was brought. If the plaintiff then had a claim against the defendant for services as an attorney, as alleged herein, it was a part of his cause of action, and should have been included therein; for, if he could divide the account into advice and counsel, attending suits in court, preparing certificates of title, so as to make three causes of action out of the transaction, there is nothing but his own temerity or sense of propriety to prevent him from subdividing it *ad infinitum*, so as to have a separate cause of action for each item of advice, or the 554 certificates of title mentioned in his complaint. By such means the plaintiff might make for himself, out of a comparatively short service, almost a perennial cause of action.

In the consideration of this case I have constantly had in mind the fact that the claims made by the plaintiff against the defendant grow out of the employment of the former by the latter as its attorney. In the nature of things, the services of a standing or regularly appointed attorney are usually rendered pursuant to some general contract or understanding, and whatever is due therefor at the end of the service or employment constitutes but one cause of action, and cannot be split up into several distinct ones. *Lucas* v. *Le Compte*, 42 Ill. 303. In the application of the salutary rule against splitting up demands, courts ought to be careful to leave no loop-hole through which an attorney may be tempted to harass and oppress his client with vexatious or spiteful litigation. Such things are well calculated not only to bring the profession of the law into disfavor, but the administration of justice into disrepute.

The demurrer is sustained.

HUGHES *v.* DUNDEE MORTGAGE & TRUST INVESTMENT CO. (Nos. 1,066 and 1,069. Two Cases.)

*Action to Recover Attorney's Fees.*

DEADY, J. These two cases were argued and submitted with the foregoing. The facts in the cases are similar, and the question made on the demurrers to the defenses is the same.

In No. 1,066 it appears that the Oregon & Washington Mortgage Savings Bank was incorporated under the laws of Great Britain, and engaged in loaning money in Oregon and Washington; that the plaintiff was its attorney, and as such, prior to January 1, 1882, made and delivered to it 347 certificates of titles to certain lands, on which it loaned $565,103.59; that said certificates were worth 1 per centum of that sum, or $5,651.03; that in August, 1882, said corporation amalgamated with the defendant, who assumed to pay its debts, including the claim of the plaintiff, which, with interest, amounts to $6,907.07.

In 1,069 it appears that the defendant was incorporated under the laws of Great Britain prior to 1879, and has since been loaning money in Oregon and Washington: that in 1879, 1880, and 1881 the plaintiff was the attorney of the defendant, and as such made and delivered to it 297 certificates of title to certain lands, on which it loaned $589,000; that said certificates were worth 1 per centum of that sum, or $5,890, which, with interest, amounts to $7,139.85.

In both these cases the defense is made that the judgment given in the action commenced February 12, 1883, is a bar, to which the plaintiff demurs as in case 1,065, *ante*, 831.

The defense is sustained, and the demurrer overruled, for the reasons given in that case.