## Cyrus Mark, Clayton Mark and Anson Mark, copartners doing business under the name of Mark Manufacturing Company, v. Schumann Piano Company.

1. STATUTES—*Par. 53, p. 1116, Hurd's Stat. 1901, Applies Only to Money Demands.*—Par. 53, Hurd's Stat. 1901, p. 1116, applies only to money demands of a plaintiff against which money demands may be set off, and to cases in which the jurisdiction of the justices may be measured by the statutory limitation of $200.

2. FORCIBLE DETAINER—*Defendant Can Not Set Up Any Cross-Demand.*—A defendant in forcible detainer can not set up any cross-demand of any kind to the action, nor does the statutory limit of jurisdiction apply to actions of forcible detainer before justices. It is immaterial to the jurisdiction how valuable the land may be, possession to which is claimed, or how high the rent. The justice has jurisdiction by virtue of the statute, without regard to the value of the fee or the rental value.

3. ELECTION—*Inconsistent Remedies Must be Co-existent.*—It is essential to the application of the doctrine of election, that the incon-

sistent remedies must have been co-existent.    Both remedies must have existed at the time of resort to one of them.

**Forcible Detainer.**—Appeal from the Circuit Court of Cook County; the Hon. OLIVER H. HORTON, Judge presiding.    Heard in this court at the March term, 1902.    Reversed and judgment entered in this court. Opinion filed January 26, 1903.

**Statement.**—Appellee admits that the following statement made by appellants' counsel is substantially correct :

" This is an action in forcible detainer brought by appellants to recover possession of the first, fourth and fifth floors of the building numbered 123 and 125 La Salle avenue, leased by appellants to appellee for the manufacture of pianos, from July 1, 1900, to April 30, 1902, at $250 per month, payable in advance on the first day of each month.

" The lease was dated June 14, 1900, and demised said premises, ' together with motive power not to exceed twenty horse-power, and sufficient heat in the varnishing and finishing room during cold weather to prevent checking the varnish (and steam heat, when necessary, from October 1st to May 1st), for fifty-nine hours per week, Sundays and legal holidays excepted, during the term of this lease.'    The lease contained the following clauses :

" ' Eighth.    To pay (in addition to the rents above specified), for all power used in excess of the amount above specified the sum of $5 per month for each horse-power, the amount used to be determined by lessor by any of the ordinary methods.    The maximum amount of power used at any one time to be the basis of calculation.

" ' Ninth.    At the termination of this lease, by lapse of time or otherwise, to yield up immediate possession to lessor, and failing so to do to pay treble the rate of rent herein specified and all damages, of every nature, for the whole time such possession is withheld, but the provisions of this clause shall not be held as a waiver by said lessor of any rights herein set forth or rights at law; nor shall receipt of said rent or damages, or any part thereof, or any other act in apparent affirmance of the tenancy, operate as a waiver of the right to forfeit and terminate this lease and expel the · lessee from the premises ' for any breach of the covenants herein.

" ' It is further agreed by the parties hereto, that after the service of any notice, or the commencement of a suit, or any proceeding of law, or after final judgment for posses-

sion of said premises, the lessor may receive and collect any rent due, and the payment of said rent shall not waive or affect said notice, said suit or said judgment.'

"March 5, 1901, appellants sent appellee a bill for power used by it in excess of twenty horse-power, and the latter denied liability therefor, and set up a counter-claim for damages to its pianos through lack of heat in the finishing room.

"July 17, 1901, appellee sent appellants a bill for its damages and credited thereon the rent due for the month of July, and on the 19th of the same month appellants replied, denying liability for any part of said bill.

"July 20, 1901, appellants commenced a suit in assumpsit against appellee for $5,000, and on September 6, 1901, filed a declaration therein, which contained special counts on the lease in question for moneys due for excess power used, for damages sustained through increase in the rate of insurance on the building, and for the rent due July first. It also contained special counts on two other leases between the same parties for rent July 1, 1901, one for the basement and the other for the second floor of the same building.

"July 24, 1901, appellants served two five days' notices on appellee, under the statute, one for failure to pay the July rent under the lease in question and one for failure to pay the July rent for the basement. Appellee having failed to pay the rent within the five days, this suit was commenced July 30th, before John K. Prindiville, a justice of the peace. At the same time appellants commenced a similar suit against appellee in the same court to recover possession of the basement. Judgment was rendered in favor of appellants in both cases on August 23, 1901. This case was appealed by appellee to the Circuit Court, where it was tried by the court without the intervention of a jury. The court found the defendant not guilty, and appellants bring the case to this court by appeal."

DANIEL F. FLANNERY, attorney for appellants.

A. D. GASH, attorney for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

Appellee's counsel relies solely on two contentions to defeat the action of the plaintiffs, appellants here: First, that the two suits in forcible detainer commenced before Justice Prindiville July 30, 1901, should have been consoli-

dated; and, second, that the commencement by appellants of a suit July 20, 1901, for the rent due July 1, 1901, was a waiver of all right of forfeiture for non-payment of the July rent, and a bar to the present suit; that the remedy by suit for the rent is inconsistent with the subsequent forcible detainer suit, and the plaintiffs having elected to pursue the former remedy, were precluded from, and could not thereafter, maintain the present suit. The statutory provision on which appellee relies in support of the first contention, is as follows :

" In all actions which shall be commenced before a justice of the peace, each party shall bring forward all of his demands against the other existing at the time of the commencement of the action, which are of such a nature as to be consolidated, and which do not exceed two hundred dollars when consolidated into one action or defense, and on refusing or neglecting to do so, shall be forever barred from suing therefor." Hurd's Stat. 1901, p. 1116, parag. 53.

The jurisdiction of justices of the peace is limited by the statute to two hundred dollars. Ib., p. 1110, parag. 16. Paragraph 53, quoted *supra*, clearly applies only to money demands of a plaintiff against which money demands may be set off, and to cases in which the jurisdiction of the justice may he measured by the statutory limitation of two hundred dollars. A defendant in forcible detainer can not set up any cross-demand of any kind to the action, nor does the statutory limit of jurisdiction apply to actions of forcible detainer before justices. It is immaterial to the jurisdiction how valuable the land may be, possession of which is claimed, or how high the rent. The justice has jurisdiction by virtue of the statute, without regard to the value of the fee or the rental value. Appellee's second contention, that appellants, having instituted suit for the rent payable July 1st, can not maintain the present suit, we can not concur in. Suppose that July 20, 1901, when the suit for rent was brought, appellants had demanded the July rent from appellee; would this have precluded a notice to quit and a subsequent suit in forcible detainer for non-payment of the rent ? Clearly not. Yet the suit, while pending and

undetermined, is a mere legal demand for the rent.    True, it is a demand to which appellee must respond, either by payment or defense, total or partial; but this does not affect its character as a demand.   Here there was no act of the appellants subsequent to the notice to quit which can be claimed as a waiver.   There was no demand for rent accruing due subsequently to the forfeiture.   The only demand was by the suit of July 20th for the July rent, which accrued due July 1st, before the forfeiture.

Taylor, in his work on Landlord and Tenant, Vol. 2, Section 485, writes :

" But the notice may be waived; for after the landlord has given notice, and the time has expired, he may do some act which amounts to a waiver of it, and recognizes a new or subsisting tenancy; as, if he makes a new demise, or receives rent of such, which has accrued due after the expiration of the notice, or after that time distrains for rent whenever accrued, his notice will be considered as having been thereby waived, and the tenancy re-established.   But it seems that a pending action for use and occupation will not invalidate the notice, for the landlord may only recover in his action rent due at the time of the expiration of the notice, although he may claim rent to a later period."

See also, 1 Woodfall's Landlord and Tenant, 1 Am. Ed., p. 323.   The latter author writes :

" But the subsequent receipt of rent due prior to the forfeiture is no waiver."   Ib.

Whatever the effect of the present action on the prior suit for rent, if any, may be, we are of opinion that such prior suit was not a waiver of appellants' right to declare a forfeiture for non-payment of the July rent.

Appellee's counsel relies on the doctrine of election between inconsistent remedies, and contends that appellants, having commenced suit July 20, 1901, for the July rent, can not maintain the present suit.   But it is essential to the application of that doctrine that the inconsistent remedies must have been co-existent, as otherwise there could have been no election, no choice between remedies.   Both remedies must have existed at the time of resort to one of them.   When appellants commenced suit for the July rent

the remedy by suit for forcible detainer did not exist. It was a condition precedent to that remedy that a five days' notice to quit should have been given, as provided by the statute, and such notice had not been given at the time the suit for rent was brought, nor was it given till July 24, 1901. Until the expiration of that notice, namely, July 29, 1901, the remedy by suit for forcible detainer did not exist. Therefore, the doctrine of election between inconsistent remedies has no application to the facts of the case.

Appellants introduced evidence making a *prima facie* case entitling them to a recovery of the premises described in the complaint. This is not controverted, and appellee's sole contentions to defeat a recovery being, as we hold, untenable, the judgment will be reversed and judgment will be entered here, finding the appellee guilty, in manner and form as stated in the complaint, and that the appellants, Cyrus Mark, Clayton Mark and Anson Mark, recover from the Schumann Piano Company, appellee, the premises described in the complaint, to wit: the first, fourth and fifth floors of the building known as numbers one hundred and twenty-three (123) and one hundred and twenty-five (125) LaSalle avenue, in the city of Chicago, county of Cook and State of Illinois, and that the said appellants have execution for the possession thereof; appellee to pay the costs of this court and of the Circuit Court.