Loren C. HURST and M. Judyth Hurst, Appellants (Plaintiffs below),

v.

Joseph M. DAVIS and Lucille M. Davis, Appellees (Defendants below).

Loren C. HURST and M. Judyth Hurst, Appellants (Defendants below),

v.

Joseph M. DAVIS and Lucille M. Davis, Appellees (Plaintiffs below).

No. 3092.

Supreme Court of Wyoming.
Nov. 19, 1963.

---

Pence & Millett and John E. Stanfield, Laramie, for appellants.

John F. Sullivan, Laramie, for appellees.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

The district court consolidated for trial two separate actions. One of these originated in a justice court upon Davises' complaint against Hursts alleging unlawful detainer of property after nonpayment of rent. Restitution of the property to Davises was ordered, and a judgment against Davises of $200 was awarded Hursts on a counterclaim. No finding of the amount of rent due Davises was made and no judgment was given Davises for any rent at all. The other action was brought by Hursts in the district court against Davises, in ten separate counts for: (1) Goods sold and delivered; (2) money paid by mistake; (3) wages paid to another; (4) money converted; (5) damages for loss of employment by reason of false representation; (6) damages for expenses incurred by reason of false representation; (7) reasonable value of services of Loren C. Hurst; (8) reasonable value for services of M. Judyth Hurst; (9) reasonable value for services of M. Judyth Hurst as postal clerk; and (10) for goods and services in decorating and installing equipment, Hursts conceding as a credit to Davises the $200 awarded Hursts in the justice court.

Davises traversed and counterclaimed Hursts owed them: (1) Rent for use of their equipment and licenses; (2) rent for an apartment owned by Davises and occupied by Hursts; (3) wages for Mrs. Davis' services to Hursts; (4) the amount of Hursts' telephone bill paid by Davises; and also claiming Davises were entitled to credit of $300 for wages paid the Hursts.

Trial being to the court without jury, it decreed Hursts were entitled to $617.49 for goods sold to Davises; $26 for money paid Davises by mistake; $50 for money belonging to Hursts and converted by Davises; and $1,050 for services of both the Hursts for three months at the rate of $350 per month. This made a total of $1,743.49 allowed the Hursts. The court then awarded Davises on their counterclaim $600 rent for their equipment and licenses; $125 rent for Hursts' use of the Davis apartment; $125 wages for Mrs. Davis' services to Hursts while Hursts were attending the funeral of a relative; $72.24 telephone bill paid by Davises for Hursts; and a credit of $330

for money paid by Davises to Hursts, thus making a total award to Davises of $1,252.-24. The court decreed Hursts were entitled to recover the difference, or a total of $491.25 from the Davises, but because the Davises had already paid Hursts $200 in settlement of the justice of the peace judgment against them, that sum was deducted from the $491.25, and judgment was rendered in favor of Hursts and against Davises for the remaining sum of $291.25. Hursts appealed to this court.

A substantial résumé of the situation which gave rise to these litigations is as follows.

The Davises periodically leased a tract of land from the Union Pacific Railroad Company and erected thereon certain improvements which became known as the Buford Store. There they dealt in groceries, operated a filling station, and sold beer under license from the State of Wyoming. Mrs. Davis was also the postmistress of Buford, and the post office was established in a portion of the building devoted exclusively to that purpose. After some previous contacts and correspondence between the Davises and Hursts, the latter moved to Buford and, according to Mrs. Hurst, on June 25, 1960, took charge of the above-mentioned business. There ensued intermittent discussions between the parties relative to executing a written lease of the Davis properties and business to the Hursts, and possibly including in such a lease an option to buy. Although attempts were made to agree upon the terms of a written lease, they failed, and no written lease was ever executed. However, an oral lease from Davises to Hursts resulted. This provided the Hursts were to lease the business and pay therefor a rental of $200 per month, paying during the months from May through October $250 per month, and paying during the months from November through April $150 per month. This arrangement was to make the monthly payments less burdensome during the winter season when business was dull and yet maintain the $200 per month rate by re-

quiring the $50 per month deferred payments be added to the normal $200 per month payments during the period when business was better. The agreement also contemplated that an inventory of Davises' stock would be taken and Hursts would pay the amount shown. Under this oral agreement Hursts took possession of the premises and business as lessees on September 26, 1960. They also used and occupied a residence on the premises consisting of four rooms and bath, but no amount as rent for this use was specified. The post office was retained by the postmistress, Mrs. Davis, although the Hursts were upon occasion sworn in as assistants and received pay for those services directly from the Government. During the period of this oral leasing, Mrs. Davis ran the business for the Hursts while they were absent due to a death in their family. Hursts paid the agreed rentals in the manner provided by the oral lease until December 1960, when differences arose between the parties, and, although they retained the business and continued to occupy the properties, the Hursts refused to make further payment of rent.

About April 27, 1961, Davises brought their action in a justice court against Hursts for unlawful detainer of the properties after Hursts' failure and refusal to pay rent. Following trial, restitution of the properties to Davises was ordered, but a judgment against Davises for $200 was rendered on a counterclaim interposed by Hursts, who appealed to the district court from only the portion of the judgment granting restitution of the properties to Davises.

■ A principal contention of appellants is that the amount awarded them as wages for their services from June 25, 1960, to September 25, 1960, offends Wyoming law, §§ 27–207, 27–208, 27–209, and 27–210, W.S.1957, which establishes 75 cents per hour as the minimum hourly wage which may lawfully be paid certain employees in this State. To reach this conclusion, appellants say, "It is perfectly clear that the

services rendered by Mr. and Mrs. Hurst at the Buford Store do not fall within any of the exclusions from the definition of 'employee.'" Among those exclusions are persons employed in a bona fide executive or administrative capacity. The character of the Hursts' employment during this period is therefore of crucial importance. Although the court termed its allowance to the Hursts as "wages," that terminology does not necessarily mean that the amount awarded the Hursts was computed on the basis of hourly wage, or that the nature of the employment was in a capacity covered by the wage-hour law. From the record it appears the Hursts' employment, during the three-month period, was that of operators or managers of the business owned by the Davises. The Davises did not control their employment, prescribe the hours of their service, nor direct their activities in any manner. The fact that accounting was made to the Davises of receipts and disbursements does not alter the fact that the Hursts' management and operation of the business was administrative and, in part at least, executive, in that they had exercised powers of decision—when to work, how to work—and many other related activities. This is apparent from Mrs. Hurst's testimony that after June 25, 1960, Mrs. Davis only came to the store for a few minutes and then did nothing in the store but went into the post office. It therefore appears the Hursts were within classes excluded from the wage-hour restriction of the statute. Webster (1961) defines "manage" as meaning to conduct and direct, to administer, to carry on business or affairs. This definition places the Hursts, during the mentioned three-month period, squarely within the administrative and executive category which is expressly excluded from purview of the wage-hour law. The court did not allow the Hursts anything on an hourly basis. The award to the Hursts was on a joint salary basis. Where the employee is not directed or controlled by an employer who prescribes the hours of work, their number, or the manner or nature of services required, it would offend reason to hold such employees may say they worked 24 hours or any other excessive number of hours each day and then claim a minimum per hour wage. The court was not required to accept the Hursts' theory of the nature of their employment when the record is replete with evidence that from June 25, to September 26, a period of three months, they were in complete charge, control, and management of the business owned by the Davises. Viewing the evidence as a whole, the court was privileged to determine that the collective services of Mr. and Mrs. Hurst in managing the business was of the reasonable value of $350 per month during the period here discussed. There was no error in the court's determination in this respect. This disposes of appellants' complaint based on failure to contradict Hursts' evidence of the number of hours they worked and the relevance of the wage-hour law.

Appellants object to the exclusion of a witness' testimony which was offered to show the reasonable value of services in the selling of oil and gasoline at the Buford Store. To qualify himself, the witness testified he was a service station operator in the City of Laramie and acquainted with salaries paid in Laramie for services in selling oil and gasoline for motor vehicles. The record shows the Buford Store was 23 miles from Laramie. No showing was made that the conditions at the Buford Store were in any way similar or comparable with those existing in the City of Laramie. The foundation laid was therefore clearly inadequate, and the testimony was properly excluded. Furthermore, the offer of proof shows the witness would not have testified as to the reasonable value of salaries but only as to the hourly wage which was paid in Laramie for the type of service rendered the witness by his employees. If this testimony had been permitted, it would have been irrelevant under the holding here made respecting the hourly wage question.

Appellants also claim Davises' judgment of $600 rent for the period December 26, 1960, to April 24, 1961, was erroneous be-

cause their rent claim was split by first bringing unlawful detainer in the justice court and thereafter bringing suit by counterclaim in the district court for rent accrued prior to commencement of the unlawful detainer action.

In order to understand the force of this contention, the appropriate parts of our statutes relating to unlawful detainer actions are set forth:

Section 1–677, W.S.1957:

"Any justice within his proper county, shall have power to inquire, in the manner hereinafter directed, as well against those who make unlawful and forcible entry into lands and tenements, and detain the same, as against those who, having a lawful and peaceable entry into lands or tenements, unlawfully or by force hold the same; and if it be found, upon such inquiry, that an unlawful and forcible entry has been made, and that the same lands or tenements are held by force, or that the same, after a lawful entry are held unlawfully, then said justice shall cause the party complaining to have restitution thereof."

Section 1–678, W.S.1957:

"Proceedings under this chapter may be had in any of the following cases:

"1. Against tenants holding over their terms, or after a failure to pay rent for three days after the same shall be due."

Section 1–684, W.S.1957:

" * * * If the case be one based on subdivision one of section 5350 [§ 1–678], the justice shall further find the amount of rent due and payable at the time of commencement of the action, together with the terms and conditions of the agreement between the parties in relation to the amount and time of payment of rent, or if the trial be by jury the verdict shall contain a finding of these facts, and the justice shall recite such findings in his docket entry of proceedings in said action; and the justice shall upon such findings in addition to entering judgment for the plaintiff to have restitution of the premises, render judgment in accordance with such findings in favor of the plaintiff and against the defendant for the amount of rent found due and payable, together with the costs of the action, * * *."

Section 1–691, W.S.1957:

"In all appeals from the judgment of a justice of the peace, in an action founded upon subdivision one of section 5350 of this chapter [§ 1–678], the defendant shall, in addition to the undertaking required by the preceding section, and at the time of the filing thereof, deposit with such justice the amount of rent found due and specified in such judgment; and, unless such deposit be made, the appeal shall be deemed and taken as not being perfected, and proceedings as upon such judgment shall thereupon be had accordingly. If the appeal be perfected, the justice shall transmit such deposit to the clerk of the appellate court, with the papers in such case; and the appellant shall thereafter, at the time when the rents shall become due, as specified in the judgment appealed from, and, as often as the same shall become due, deposit the amount thereof with the clerk of such appellate court; and, in case the said appellant shall, at any time during the pendency of such appeal, and before final judgment therein, neglect or fail to make any deposit of rent, falling due at the time or times specified in the judgment appealed from, the court in which such appeal is pending shall, upon such fact being made to appear, and upon motion of the appellee, affirm the said judgment appealed from, with costs; and proceedings shall thereupon be had as in like cases determined upon the merits, and the rent money so deposited shall be paid to the plaintiff or his assignee upon order of the court."

■ While the rule against splitting causes of action is reasonably clear, notwithstanding it has been expressed differently and in various ways, its application is not infrequently very difficult. 1 C.J.S. Actions § 102f(2), pp. 1311–1312; and 1 Am.Jur.2d, Actions, § 128, p. 648. It should also be remembered that the rule against splitting is not an estoppel but a bar. 1 C.J.S. Actions § 102d, p. 1309; Hughes v. Dundee Mortgage Trust Investment Co., D.C.Or., 26 F. 831; and the rule differs from res judicata inasmuch as it is based exclusively on public policy. 1 C.J.S. Actions § 102d, p. 1309; Huffman v. Knight, 36 Or. 581, 60 P. 207. Also, the object of the splitting rule is to prevent multiplicity of suits, prevent vexatious litigation, and to avoid duplication of costs and expenses. 1 C.J.S. Actions § 102c, p. 1308. However, the principles of estoppel and the finality of prior adjudication are not entirely without significance in applying the rule against splitting of causes of action. Although few cases have come to this court where error has been charged on the ground of splitting causes of action, we do find some signposts. For instance, in Merrill v. Bishop, 69 Wyo. 45, 60–61, 237 P.2d 186, 191, the court noted, " 'a court of equity delights to do complete justice, and that it constantly aims to settle the rights of all persons interested in the subject-matter, not in piecemeal, but in a single suit.' " However, in the following sentence it is pointed out that the policy against piecemeal determination of rights should not be unduly burdensome. This indicates that it is the policy of this State that the rule against splitting causes of action should not be allowed to unduly burden the Davises when they sought summary restitution of their properties. Certainly it would be an undue burden upon Davises if they were compelled to forego the benefits of summary restitution unless they forfeit monies due them in excess of the $200 jurisdictional limit of the justice court. Public policy, which is the exclusive basis for the rule against splitting, will not be served by such a holding. The principal object of the statute under which this detainer action was brought was to give summary remedy against tenants who hold over after failure to pay rent and to save landlords from the need to resort to cumbersome, dilatory, and expensive suit in ejectment. Sass & Crawford v. Thomas, 6 Ind. T. 60, 89 S.W. 656, 11 L.R.A.,N.S., 260, affirmed 8 Cir., 152 F.2d 627, dismissed 214 U.S. 489, 29 S.Ct. 695, 53 L.Ed. 1057; Kaufmann v. Liggett, 209 Pa. 87, 58 A. 129, 67 L.R.A. 353, 103 Am.St.Rep. 988; 32 Am. Jur., Landlord and Tenant, § 1016, p. 850, n. 13. All of these matters affect the proper determination of Hursts' claim of splitting.

Furthermore, there is grave question but that the different and independent relief of restitution sought in the detainer action and the relief by compensation, sought by counterclaim in the district court, were separate and distinct causes of action which were not in any event subject to the rule against splitting. 1 Am.Jur.2d, Actions, § 131, p. 650.

■ From a penned notation on the margin of the original complaint in the unlawful detainer action, it appears that suit was commenced April 27, 1961, at which time the four months' period for which the district court gave its $600 judgment for rent had elapsed. Section 1–684, supra, provides that when restitution is adjudged, the justice of the peace or the jury, if there be a jury, shall further find the amount of rent due and payable at the commencement of the action, and the justice of the peace shall render judgment in favor of the plaintiff and against defendant for the amount of rent so found due. The certified transcript of proceedings before the justice of the peace does not show any such finding was made nor was any judgment rendered for rent due Davises from Hursts. However, the justice of the peace did make a general finding in favor of Davises on their complaint for unlawful detainer and gave them judgment for restitution of the premises. Under decisions of this court such a general finding carries with it every finding necessary to sustain the judgment. Hol-

brook v. Continental Oil Company, 73 Wyo. 321, 278 P.2d 798; Lucksinger v. Salisbury, 72 Wyo. 164, 262 P.2d 396, rehearing denied 264 P.2d 1007; Jacoby v. Town of City of Gillette, 62 Wyo. 487, 174 P.2d 505, 169 A.L.R. 502, rehearing denied 177 P.2d 204; Hinton v. Saul, 37 Wyo. 78, 259 P. 185. Consequently, the judgment of restitution carried with it a finding that the Hursts unlawfully detained the property after failure to pay rent for three days after the same became due.

Hursts appealed to the district court but only from the judgment of restitution granted Davises. The district court upheld that judgment, and now its correctness is the single question presented here in the detainer matter. In that action there never was an issue as to the *amount* of rent due. Davises' action succeeded when it was shown that rent in some amount was due and owing for more than three days at the commencement of the suit. That was the only issue presented by Davises' complaint. Neither Hursts' answer nor their cross-complaint injected any issue as to the *amount* of rent due Davises at the commencement of the action, and Davises did not by their complaint seek any recovery therefor.

Our statutory detainer action is primarily intended to give summary restitution of properties unlawfully withheld. If the direction appended to § 1–684, that, upon granting restitution, the justice of the peace or the jury, if there be one, not only find the amount of rent due at the commencement of the action, together with the terms and conditions of the agreement between the parties in relation to the amount and time of payment of rent, but also that the justice of the peace shall *give judgment* for the amount of rent so found to be due, is to be construed as mandatory in every case, even when the amount found due is in excess of the court's constitutional jurisdiction, then the statutory requirement for such a judgment would clearly be unconstitutional and void. On the other hand, a

mere *finding* of the amount of rent due, even though that amount be in excess of the jurisdictional judgment limitation, would not be constitutionally violative. Although such a finding was not made, it might have been and properly should have been made. While the importance of such a finding in the present case was lost when the Hursts restored Davises to possession following the judgment of restitution, a finding of the amount of rent due at the commencement of the action, together with the times of payment under the agreement between the parties, is ordinarily of considerable importance. This is because, by § 1–691, an appealing defendant who does not restore the plaintiff to possession during pendency of the appeal is required to deposit the amount of rent found due with the justice of the peace and, thereafter, to successively deposit with the clerk of the appellate court accruing rent as it becomes due, in order to perfect and keep alive the appeal. Thus, even though by appeal the party decreed restitution may be deprived of possession until final judgment, if ultimately successful, such a party is assured of receiving the full rental value found for the entire period during which possession will have been unlawfully withheld.

The value of these requirements is obvious and should, if possible, be retained. The way to accomplish that favorable result is pointed out to us in Brown v. Clark, 47 Wyo. 216, 232, 34 P.2d 17, 21, where our predecessors said:

"This court has frequently been confronted with the necessity of limiting the operation of a statute to avoid a conflict with the Constitution. See Board of Commissioners v. Woods, 18 Wyo. 316, 106 P. 923, 107 P. 753; Salt Creek Transp. Co. v. Commission, 37 Wyo. 488, 496, 263 P. 621, and cases cited. It is not at all uncommon for the court by construction so to limit a statute as to make it operative on only those persons, things, or *situations* to

which it may apply without violating the superior law. * * *" (Emphasis supplied.)

Although in the Brown case the court held the objectionable portion of the act unconstitutional, without declaring the entire act void, it is unnecessary to hold unconstitutional any part of the statute here under consideration, but rather to construe the portion of the statute which requires rendering a judgment for the amount of rent found due as only applying when the amount of rent due is within the jurisdictional limitation of the justice of the peace to render judgment therefor. Under such a limiting interpretation, should the amount of rent found due exceed the jurisdictional limitation of the justice of the peace, no *judgment* for rent would be rendered. Nevertheless the *finding* of amount of rent due and the terms of the parties' agreement will be retained. This insures that a successful plaintiff will receive full monetary protection during pendency of an appeal. In this view of the statute the amount of rent due at the commencement of the action, while determined by the finding, could not be adjudicated in the sense that no judgment therefor could be rendered in the justice court. This robs the detainer action of participation in the recovery of any rent, with the result that the only action for rent was that brought upon Davises' counterclaim in the district court action. Schofield v. Rideout, 233 Wis. 550, 290 N.W. 155, 133 A.L.R. 834. Cases directly in point with facts paralleling those before us have not been found, but a few substantially similar are helpful. Thus in H. G. Hill Co. v. Taylor, 234 Ala. 282, 174 So. 481, where the statute provided a double rent penalty for unlawfully retaining possession of premises, it was held that separate actions might be brought for possession and for recovery of the penalty and if the amount of damages—compensatory or penal—exceeded the jurisdiction of the justice court, the damages must be claimed in a separate action. An earlier Alabama case, Ullman v. Herzberg, 91 Ala. 458, 8 So 408, 409, sustaining the

overruling of a demurrer to a second action gave as one of its reasons that the amount sued for in the second action was in excess of a justice's jurisdiction and cannot be recovered in an action of unlawful detainer, citing the Alabama constitution limiting the jurisdiction of the justice of the peace.

In Shunick v. Thompson, 25 Ill.App. 619, 623–624, the court noted the action of forcible entry and detainer was purely statutory and made no provision for rendering judgment for either rent or damages, and, therefore, neither could be allowed in the statutory action. Construing our statute as above indicated, there was absent any provision authorizing the justice of the peace to render judgment for rent in the instant matter and therefore no splitting of the action for rent occurred.

In Keating v. Springer, 146 Ill. 481, 34 N.E. 805, 809, 22 L.R.A. 544, 548, 37 Am.St. Rep. 175, it was flatly stated, "The judgment in forcible entry and detainer is conclusive only as to the right of possession, and, in a certain class of cases, as to the existence of the relation of landlord and tenant between the parties, and as to the tenant's wrongful holding over." The court also cited Robinson v. Crummer, 5 Gil. 218, 10 Ill. 218, as having said, "'damages are not recoverable in this action [forcible entry and detainer], but the only judgment for the plaintiff is that he have restitution of the premises." In line with what has been said, appellants' contention of error because of splitting of causes of action is overruled.

■ In the absence of a statute expressly authorizing a defendant to interpose setoff or counterclaim in detainer actions, they are not permissible. This is held in a number of states, including Florida, Arizona, Iowa, California, Minnesota, and Illinois. Bennett v. Orange State Oil Co., 157 Fla. 882, 27 So.2d 417; Neyens v. Donato, 67 Ariz. 1, 188 P.2d 588; Hinton v. Hotchkiss, 65 Ariz. 110, 174 P.2d 749, 754; Olds Bros. Lumber Co. v. Rushing, 64 Ariz. 199, 167 P.2d 394; Votruba v. Hanke, 202 Iowa 658, 210 N.W. 753; Arnold v. Krig-

baum, 169 Cal. 143, 146 P. 423, Ann.Cas. 1916D, 370; D'Amico v. Riedel, 95 Cal.App. 2d 6, 212 P.2d 52; Inman v. Schecher, 86 Cal.App. 193, 260 P. 605; Knight v. Black, 19 Cal.App. 518, 126 P. 512; William Weisman Holding Co. v. Miller, 152 Minn. 330, 188 N.W. 732; Case v. Rewerts, 15 Ill.App. 2d 1, 145 N.E.2d 251; Bozarth v. Bozarth, 399 Ill. 259, 77 N.E.2d 658; Mark v. Schumann Piano Co., 105 Ill.App. 490, affirmed Schumann Piano Co. v. Mark, 208 Ill. 282, 70 N.E. 226. Thus in Votruba v. Hanke, supra, 210 N.W. at 754, it was said where a counterclaim was interposed, "Such proceedings would be wholly inconsistent with the limited scope of the issue in a forcible entry and detainer case, and with the summary character of the remedy itself." In Inman v. Schecher, supra, 260 P. at 607, the court stated, "A set-off or counterclaim is not permissible in an action for unlawful detainer." Also, in D'Amico v. Riedel, supra, 212 P.2d at 53, the court explained:

"* * * It is the general rule that neither a counterclaim nor cross-complaint is permissible in an action in unlawful detainer. The reason for the rule is that since the action is a summary proceeding designed especially for the purpose of a speedy means of recovering possession of real property, tenants withholding the premises in violation of the covenants of their lease cannot through means of a cross-complaint or counterclaim frustrate the extraordinary remedy provided by the statute. * * *"

And Illinois held, in Case v. Rewerts, supra, 145 N.E.2d 256, where forcible entry and detainer action was brought for the distinctive purpose of obtaining possession of a farm, "no matter not germane to such purpose could be introduced in the proceedings by joinder, counterclaim or otherwise," and, previously, the Illinois court in Mark v. Schumann Piano Co., supra, 105 Ill.App. 493, noted, "A defendant in forcible detainer can not set up any cross-demand of any kind." See also Abrams v. Watson, 59 Ala. 524; and Collins v. Karatopsky, 36 Ark. 316.

The efficacy of our statute as a summary remedy giving restitution for nonpayment of rent is lessened if not destroyed if a setoff or counterclaim is permitted to be interposed. Consequently, the Hursts' counterclaim should not have been allowed. Even where sanctioned at all, they only go to the question whether rent was due and unpaid and hence could not under any circumstances, justify the judgment rendered for $200 in Hursts' favor by the justice of the peace. See 32 Am.Jur., Landlord and Tenant, § 1023, p. 855. It follows that the counterclaims pleaded by the Hursts in the detainer action were improperly considered and should have been stricken. However, Davises did not appeal from the judgment rendered upon Hursts' counterclaim, so, although the judgment was improper, it stands.

While appellants complain there was error in the district court's awards to Davises of $600 rent for the period December 26, 1960, to April 24, 1961; $72.24 for Davises' payment of Hursts' telephone bill; and $125 for Mrs. Davis' services while substituting for Hursts while they were attending the funeral of a relative, because not supported by the evidence, our examination of the entire record convinces the evidence amply justifies these awards.

Similarly, we find no merit in appellants' insistence the district court erroneously denied Hursts' claim based upon Davises' alleged fraud and misrepresentation respecting a sale to Hursts of the Buford Store properties, and hold the denial of Hursts' motion for new trial based upon purported new evidence concerning the same was proper.

The judgment of the district court upon the actions consolidated and tried together is therefore affirmed.

Affirmed.